[No. 45751.   En Banc.   September 27, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTOPHER JAY WILCOX, *Appellant*.

*Mark Leemon* of Seattle–King County Public Defender *Association*, for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Elsa R. Durham* and *Marilyn Showalter, Deputies,* for respondent.

BRACHTENBACH, J.—Defendant was charged with first- and second-degree arson. He was committed to Western State Hospital for observation as to (1) his competency to stand trial and (2) his legal sanity at the time of the charged offenses. When the matter came to trial before the court, both sides stipulated that defendant was competent to stand trial and that he was criminally insane when the acts of arson were committed.

The criminally insane procedures statute requires a determination of whether the defendant, if acquitted because of insanity, is (1) a substantial danger to other persons, (2) whether he presents a substantial likelihood of committing felonious acts jeopardizing public safety or security and (3) whether it is in the best interests of defendant and others that he be placed in treatment less restrictive than detention in a state mental hospital. RCW 10.77.040(3), (4) and (5). If the issues are tried to the court, it must make findings in substantially the same form as set forth above. RCW 10.77.080; 10.77.110.

After hearing testimony on these issues, the court committed defendant to Western State Hospital for treatment as a criminally insane person until further order of the court. We affirm.

Defendant's argument is that the statute does not specify who has the burden of proof on the elements set forth in RCW 10.77.040 and does not specify what standard of proof must be met in order to commit him under the statute. This he contends is a deprivation of liberty without due process. We disagree.

Taken as a whole, RCW 10.77 is replete with due process concepts. RCW 10.77.010 provides applicable definitions; 10.77.020 delineates defendant's rights including the right to counsel and an indigent's right to have publicly paid

professional examination on his behalf. Commitment cannot exceed the period of sentence for the underlying criminal act. RCW 10.77.020(3). His right against self-incrimination is preserved. RCW 10.77.020(4). RCW 10.77-.030(2) advises the defendant that it is his burden to prove the defense of insanity but only by preponderance of the evidence.

██ Turning to the specifics, is there a denial of due process by failure of the statute to assign the burden of proof to the State? There are two reasons why such is not a denial of due process. First, in this case, the State in fact assumed the burden of proof or persuasion. It went forward, the court afforded defendant the right of cross-examination and the right to present rebuttal testimony. Had the statute said that the State had the burden nothing different would have happened.

Second, quite apart from any statutory requirement, it is a fundamental precept of our system that a deprivation of liberty can occur only after affording due process. The commitment of a criminally insane person is a deprivation of liberty and subject to this constitutional guaranty of due process. We have so held in analogous situations. *In re Levias,* 83 Wn.2d 253, 255, 517 P.2d 588 (1973) (civil commitment proceeding); *In re Quesnell,* 83 Wn.2d 224, 229–30, 517 P.2d 568 (1973) (civil commitment proceeding); *Johnson v. Morris,* 87 Wn.2d 922, 929, 557 P.2d 1299 (1976) (juvenile commitment proceeding). The United States Supreme Court has been specific in this matter. In *O'Connor v. Donaldson,* 422 U.S. 563, 580, 45 L. Ed. 2d 396, 95 S. Ct. 2486 (1975), in a concurring opinion it was said:

> There can be no doubt that involuntary commitment to a mental hospital, like involuntary confinement of an individual for any reason, is a deprivation of liberty which the State cannot accomplish without due process of law. *Specht v. Patterson,* 386 U.S. 605, 608 (1967). Cf. *In re Gault,* 387 U.S. 1, 12–13, (1967). Commitment must be justified on the basis of a legitimate state interest, and the reasons for committing a particular individual must be established in an appropriate proceeding.

Thus the State had the burden of proof which it satisfied in this case. *See generally* German & Singer, *Punishing the Not Guilty: Hospitalization of Persons Acquitted by Reason of Insanity,* 29 Rutgers L. Rev. 1011 (1976); 87 Harv. L. Rev. 1190 (1974).

The second issue is whether there is a denial of due process because the statute does not explicitly set the standard of proof which the State must meet. Defendant argues the standard must be that of beyond a reasonable doubt or at least clear, cogent and convincing evidence and contends that the trial court applied a lesser standard.

While the statute does not establish a standard of proof, it is not without guidelines which must be met—guidelines which inure to the benefit of the defendant. The trier of the fact must find that the defendant presents a *substantial* danger to other persons or that he presents a *substantial* likelihood of committing other felonious acts. Further, it is not just any felonious acts which must be likely, but only those which jeopardize public safety or security. RCW 10.77.040(3), (4); 10.77.110.

In establishing the standard of proof required, we must recognize two factors. We are dealing with a most imprecise area of human behavior and we are attempting to predict future conduct of a particular individual. *See* A. Stone, *Mental Health and Law: A System in Transition* 25–37 (1975); Cocozza & Steadman, *The Failure of Psychiatric Predictions of Dangerousness: Clear and Convincing Evidence,* 29 Rutgers L. Rev. 1084, 1098–99 (1976); Dershowitz, *The Law of Dangerousness: Some Fictions About Predictions,* 23 J. Legal Educ. 24, 46 (1970).

Acknowledging that the so-called standards of proof are artificial and illusory at best, it is unreal to insist that the statutory elements be proved beyond a reasonable doubt or by clear, cogent and convincing evidence. *See State v. Blubaugh,* 80 Wn.2d 28, 36, 491 P.2d 646 (1971); Wiehl, *Our Burden of Burdens,* 41 Wash. L. Rev. 109, 117 (1966).

We hold that proof by a preponderance of the evidence of the statutory elements accords due process to the

defendant. *See State v. Krol,* 68 N.J. 236, 257, 344 A.2d 289
(1975). This means that the State must convince the trier
of the fact that it is more probably true than not that
defendant is dangerous to other persons or is likely to com-
mit felonious acts jeopardizing public safety. Those criteria
were met in this case and the judgment is affirmed.

UTTER, C.J., and STAFFORD, WRIGHT, HOROWITZ, and
DOLLIVER, JJ., concur.

WILLIAMS, J. (concurring in part and dissenting in
part)—I concur with the result reached by the majority and
its determination of the standard applicable to proof of the
elements of RCW 10.77.040.[1] I dissent, however, from the
holding that the burden of proving those elements is on the
State. Where the State has proved the unlawful act and the
defendant either proves or stipulates to the fact that he was
insane at the time of the act, I believe the burden should
rest on the defendant to prove by a preponderance of the
evidence the elements which determine whether he should
be committed or set free.

---

[1] RCW 10.77.040 states:

"Whenever the issue of insanity is submitted to the jury, the court shall
instruct the jury to return a special verdict in substantially the following form:

|  |  | answer yes or no |
|---|---|---|
| 1. | Did the defendant commit the act charged? | ___ |
| 2. | If your answer to number 1 is yes, do you acquit him because of insanity existing at the time of the act charged? | ___ |
| 3. | If your answer to number 2 is yes, is the defendant a substantial danger to other persons unless kept under further control by the court or other persons or institutions? | ___ |
| 4. | If your answer to number 2 is yes, does the defendant present a substantial likelihood of committing felonious acts jeopardizing public safety or security unless kept under further control by the court or other persons or institutions? | ___ |
| 5. | If your answers to either number 3 or number 4 is yes, is it in the best interests of the defendant and others that the defendant be placed in treatment that is less restrictive than detention in a state mental hospital?" | ___ |

The majority correctly states, at page 612, that "[t]he commitment of a criminally insane person is a deprivation of liberty and subject to this constitutional guaranty of due process." From this proposition, it concludes that "[t]hus the State had the burden of proof which it satisfied in this case." I do not see how the former proposition logically leads to the latter. It is not a violation of the due process clause to place the burden of proof on a defendant who pleads not guilty by reason of insanity. *Leland v. Oregon,* 343 U.S. 790, 96 L. Ed. 1302, 72 S. Ct. 1002 (1952); *see State v. Piche,* 71 Wn.2d 583, 430 P.2d 522 (1967), *cert. denied,* 390 U.S. 912, 19 L. Ed. 2d 882, 88 S. Ct. 838 (1968). *See Patterson v. New York,* 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977), which reaffirms *Leland.* Accordingly, due process should not preclude allocating to the defendant the burden of proving he is no longer insane and dangerous for the purpose of commitment.

The majority supports its conclusion that the State must bear the burden of proof in this situation by citing cases involving civil commitment. A number of courts have held that equal protection requires that an insanity acquittee receive substantially the same protection afforded to a civil committee, *except* where there are good reasons for different treatment. *State v. Alto,* 589 P.2d 402 (Alaska 1979); *Bolton v. Harris,* 395 F.2d 642 (D.C. Cir. 1968); *In re Franklin,* 7 Cal. 3d 126, 496 P.2d 465, 101 Cal. Rptr. 553 (1972); *People v. McQuillan,* 392 Mich. 511, 221 N.W.2d 569 (1974); *People v. Lally,* 19 N.Y.2d 27, 277 N.Y.S.2d 654, 224 N.E.2d 87 (1966). *See* Kirschner, *Constitutional Standards for Release of the Civilly Committed and Not Guilty by Reason of Insanity: A Strict Scrutiny Analysis,* 20 Ariz. L. Rev. 233 (1978); Comment, *Commitment Following Acquittal by Reason of Insanity and the Equal Protection of the Laws,* 116 U. Pa. L. Rev. 924 (1968).

There are obvious distinctions between civil committees and insanity acquittees which justify allocating the burden of proof on the issue of commitment to the latter but not the former. One difference was explained in *Alto,* where the

Supreme Court of Alaska considered an issue similar to the one before this court. The court stated at page 406:

We believe there are legitimate reasons for a different result. The acquittee by reason of insanity has, by his affirmative defense, admitted that he was insane at the time of the act in question and he has presented evidentiary support for his admission. Such an admission distinguishes the acquittee by reason of insanity from one whose involuntary commitment is civilly sought and has consistently maintained that he is not mentally ill.

It is of utmost importance that a defendant who pleads not guilty by reason of insanity admits that he is insane and seeks to persuade the factfinder of his insanity at the time of the offense. The position of an insanity acquittee is thus markedly different from the stance of a defendant in a civil commitment. Standing alone, this factor is sufficient to warrant a dissimilar allocation of the burden of proof in civil and criminal commitment cases.

The importance of the stance taken by the defendant in regard to his own mental condition was recognized by the United States Supreme Court in *Lynch v. Overholser*, 369 U.S. 705, 8 L. Ed. 2d 211, 82 S. Ct. 1063 (1962), where the court reviewed the automatic commitment of insanity acquittees under a District of Columbia statute. In *Lynch*, the defendant had made no claim of mental irresponsibility and he adduced no evidence to that effect. Nonetheless, the trial judge concluded that the defendant was not guilty by reason of insanity. Accordingly, defendant was committed pursuant to a statute which provided for the automatic commitment of any person who is acquitted solely on the ground that he was insane at the time of the commission of the offense. D.C. Code § 24–301(d)(1). The United States Supreme Court reversed the trial court's action in ordering the defendant committed. The court based its ruling on the ground that this section applies only to a defendant who affirmatively relies on a defense of insanity, and not to the defendant in that case who had maintained that he was

mentally responsible when the alleged offense was committed. The court thus recognized the importance of considering the existence of an insanity plea in determining a defendant's post–acquittal rights regarding commitment.

Another reason for allocating the burden of proof on the issue of commitment differently in civil and criminal cases stems from the finding that the insanity acquittee has committed a criminal act. He therefore differs from the civil committee who is committed because of his *potential* to commit dangerous acts and not necessarily because he has committed them. *State v. Alto, supra* at 406. This court noted in *In re Kenstrip v. Cranor,* 39 Wn.2d 403, 405, 235 P.2d 467 (1951), that

> [t]he doing of criminal acts makes an insane person criminally insane. The safety of society requires that the law distinguish the insane from the criminally insane in its disposition of them.

This distinction justifies allocating the burden differently for these two classes in that the standard of proof which is fixed for the adjudication of any particular question reflects a judgment as to the acceptability of a mistaken determination:

> For example, placing the burden of proof on the state beyond a reasonable doubt in criminal cases reflects our belief that it is worse tha[t] an innocent man be jailed than that a guilty man go free. The differences between a civil commitment proceeding and a post–acquittal hearing, as they relate to the burden and standard of proof, can be readily illustrated. In a civil commitment, if a mistake is made and a sane man is determined to be insane, the result will be the involuntary commitment of a person of sound mind who has committed no criminal act. This is an intolerable result, which justifies placing a heavy burden on the party seeking commitment. If the same mistake is made in a post–acquittal proceeding, it will mean that one who has committed a criminal act and who has escaped criminal responsibility for it, perhaps because of an earlier duplication of the same mistake, will be institutionalized. The consequences of the mistake in this case seem much less condemnable than in the

civil proceeding and justify a different margin of error. *See United States v. Brown,* 155 U.S.App.D.C. 402, 405, 478 F.2d 606, 609 (1973).

(Footnote omitted.) *State v. Alto, supra* at 406–07. *See In re Winship,* 397 U.S. 358, 368, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970) (Harlan, J., concurring).

It is commonly known that true mental illness rarely disappears overnight. One author comments:

> It would seem, however, almost a matter of common knowledge that insanity is for the most part a long–lasting phenomenon. Although the discipline of psychology is of relatively recent origin and has not achieved nearly the degree of certitude attained by other sciences, we have long since discarded the notion that lunacy is the manifestation of a sudden visitation by evil demons.

116 U. Pa. L. Rev. 935.

Under the speedy trial rule of the state, CrR 3.3, a defendant will be brought to trial within a reasonable time after the commission of the alleged offense at which time his or her future dangerousness is determined. In another jurisdiction where "sometimes years" may pass between the charged offense and the commitment hearing, it may well be "that acquittal by reason of insanity says precious little on the question whether a person presently suffers from mental illness." *United States v. Brown,* 478 F.2d 606, 613 (D.C. Cir. 1973) (Wright, J., dissenting). In this state, however, where an insanity acquittee is heard on the question of commitment within a reasonable time after the charged offense, a presumption of continuing insanity may be considered valid.

Accordingly, I believe it is reasonable to presume that the insanity of a defendant who has pleaded not guilty by reason of insanity, established by a preponderance of the evidence, has continued to the time of trial. *In re Brown,* 39 Wash. 160, 81 P. 552 (1905); *In re Franklin, supra; Mills v. State,* 256 A.2d 752 (Del. 1969); *State v. Allan,* 166 N.W.2d 752 (Iowa 1969). *See State v. Bonner,* 53 Wn.2d 575, 335

P.2d 462 (1959); *In re Kenstrip v. Cranor, supra; In re Burnett,* 30 Wn.2d 160, 191 P.2d 283 (1948).

In practical terms, it may be added that pursuant to the majority opinion juries will now be charged in regard to three separate burdens of proof where a defendant pleads insanity. They will now be told that the State has the burden of proving the elements of the offense beyond a reasonable doubt; that the defendant has the burden of proving his insanity at the time of the offense by a preponderance of the evidence; and that the State has the burden of proving he is not safe to be at large by a preponderance of the evidence. Consequently, juries will now be required to draw precise distinctions based on psychiatric evidence which by its nature is imprecise. As stated by the United States Supreme Court:

> Psychiatric diagnosis, in contrast, is to a large extent based on medical "impressions" drawn from subjective analysis and filtered through the experience of the diagnostician. This process often makes it very difficult for the expert physician to offer definite conclusions about any particular patient.

*Addington v. Texas,* 441 U.S. 418, 60 L. Ed. 2d 323, 99 S. Ct. 1804 (1979). One author has observed that "[e]ven a psychiatrist would hesitate to certify to recovery so soon after the insane act. A jury is quite incompetent to make this determination on the basis of evidence introduced at the criminal trial." Weihofen, *Institutional Treatment of Persons Acquitted by Reason of Insanity,* 38 Tex. L. Rev. 849, 850 (1960). Another writer suggests that there is *no* psychological or physical sign or symptom which can be reliably used to discriminate between the potentially dangerous and harmless individual, and that experts on human behavior should not be called upon to predict future dangerousness. *See* Diamond, *The Psychiatric Prediction of Dangerousness,* 123 U. Pa. L. Rev. 439 (1974).

In requiring the jury to determine a defendant's insanity at the time of the act as well as his dangerousness at the time of trial, we ask the jury to make a distinction which at

best is difficult and at worst is based on pure speculation. By dividing the burdens of proof as the court now suggests, we add confusion to what is already a difficult enough task.

For these reasons, I believe that a defendant who has pleaded and proved himself to be insane at the time he committed the criminal act should bear the burden of proving that he is safe to be at large at the time of trial. This is not to say that an insanity acquittee is entitled to substantially fewer procedural safeguards than a civil committee; rather, it means only that the State need not necessarily afford insanity acquittees *identical* procedures to those afforded defendants in civil commitment cases.[2]

I therefore concur in part and dissent in part.

ROSELLINI and HICKS, JJ., concur with WILLIAMS, J.

Reconsideration denied December 3, 1979.

---

[2]*See* Comment, *Commitment Following Acquittal by Reason of Insanity and the Equal Protection of the Laws,* 116 U. Pa. L. Rev. 924 (1968), whose author firmly advocates, at page 939, that "[c]riminal commitment procedures offering considerably fewer safeguards than corresponding civil commitment procedures do not afford equal protection of the laws." Despite his strong adversarial stance on this issue, the author concedes, at page 940, that "[a] strong state interest in deterring false pleas or a considered affirmation of the validity of the presumption of continuing insanity might conceivably justify placing the burden of proof on the person seeking to avoid commitment."