[No. 49384-1-I. Division One. May 19, 2003.]

MARK BORN, *Appellant*, v. STEVE THOMPSON, *as Director of the King County Jail*, ET AL., *Respondents*.

58

*Christine A. Jackson* and *Carol Ellerby* (of *The Public Defender Association*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Cristy J. Craig* and *Lisa R. Lawrence, Deputies*, for respondents.

Cox, A.C.J. — ■ RCW 10.77.090, a provision of the criminally insane procedures act, permits a court to stay a misdemeanor criminal prosecution based on specific statutory criteria. They include, among other things, "a pending charge [against a defendant] of one or more violent acts" and a finding that the defendant is not competent. Based on the fulfillment of the statutory criteria, a court may order the defendant to be placed in the custody of the state Department of Social and Health Services for treatment and restoration of competency. The statutory maximum period of custody is 29 days.[1]

We must decide in this case the proper burden of proof and who must meet it as a predicate to confinement of the defendant for mental health treatment to restore competency. We must also decide if the trial court properly determined that the pending charge against Mark Born was for a "violent act," as defined in RCW 10.77.090 at the time he was subjected to the procedures challenged here. Finally, we must decide whether the term "violent act" is void for vagueness.

We conclude that the term "violent act" in RCW 10.77.090 is not unconstitutionally void for vagueness. We also hold that the State met its proper burden of proof of preponderance of the evidence to demonstrate that the pending charge against Born was for a "violent act" under RCW

---

[1] Commitment for competency determination under RCW 10.77.060(1)(a) may not exceed 15 days, and commitment for competency restoration under RCW 10.77.090(1)(d)(i)(C)(I) may not exceed 14 days in addition to any unused time of the evaluation. Thus, the maximum period of custody is the sum of these two periods, 29 days. The court is required to state in its order the total number of days of confinement. RCW 10.77.090(1)(d)(i)(C)(I).

10.77.090. Thus, the superior court properly dismissed Born's application for a writ of habeas corpus. We affirm.

Born was riding a Metro bus that completed its route and was stopped at a layover point. He was seated near the front of the bus near the driver. The driver, who was about to start a new route, stood up and twice asked Born to leave the vehicle. Both times, Born "raised his fist and cocked it back as if to hit" the driver. The first time he told the driver "you will take me where I want to go." The driver feared that Born would hit him. In response to a telephonic request for assistance from the driver, an officer from the sheriff's office arrived on the scene, arrested Born, and later completed a police incident report.

The County charged Born with unlawful bus conduct, a misdemeanor violation of the King County Code. After he was booked into the King County Jail, it appears that a psychologist attempted to examine him pursuant to a court order under RCW 10.77.060.[2]

On October 11, 2001, a district court judge held a hearing to determine competency and whether the court should issue an order for mental health treatment and restoration of competency under RCW 10.77.090(1)(d)(i). No testimony was presented. The court relied solely on a psychologist's report prepared while Born was in the King County Jail and the police incident report. The court determined that Born was not competent and that he had committed a "violent act," as defined in RCW 10.77.010(21).[3] Accordingly, the judge ordered Born to be transported to and confined at Western State Hospital for mental health treatment and restoration of competency.

---

[2] RCW 10.77.060 states in relevant part as follows:

(1)(a) Whenever . . . there is reason to doubt [the defendant's] competency, the court on its own motion or on the motion of any party shall either appoint or request the secretary to designate at least two qualified experts or professional persons, one of whom shall be approved by the prosecuting attorney, to examine and report upon the mental condition of the defendant.

[3] Born does not challenge either the psychologist's report or the court's finding of incompetency.

Thereafter, Born applied to the King County Superior Court for a writ of habeas corpus. At the October 16, 2001 hearing on the application for the writ, the parties stipulated that the only evidence for the superior court to consider was the police incident report describing Born's encounter with the bus driver. The court denied the application for the writ.

Upon Born's return to the district court following his stay at Western State Hospital, the district court determined that he was still not competent. The State moved to dismiss the charge without prejudice, and the court granted the motion, directing that Born be held for 72 hours for evaluation regarding filing a petition under chapter 71.05 RCW, as provided by RCW 10.77.090(1)(d)(iii)(B).

Born appeals the denial of the writ.

## MOOT QUESTIONS

■ The parties dispute whether this case is now moot. Born's commitment for competency restoration has ended, and this court can no longer provide him any effective relief.[4] Assuming that this case is moot, we nevertheless address the issues before us because they involve matters of continuing and substantial public interest.

■ Our courts have consistently stated that clarifying "the statutory scheme governing civil commitment is a matter of continuing and substantial public interest."[5]

---

[4] A case is moot if the court can no longer provide effective relief. *Westerman v. Cary*, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994) (citing *Orwick v. Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984)). In general, where only moot questions or abstract propositions are involved, or where the substantial questions involved in the trial court no longer exist, an appeal should be dismissed. *Westerman*, 125 Wn.2d at 286 (citing *Sorenson v. Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)).

[5] *In re Det. of C.W.*, 147 Wn.2d 259, 270, 53 P.3d 979 (2002) (clarifying application of statutory six-hour time limit in which to refer a person for mental health services); *In re Det. of Swanson*, 115 Wn.2d 21, 24-25, 804 P.2d 1 (1990) (clarifying when, for purposes of the civil commitment statute, the 72-hour detention period stipulated by statute begins and ends); *In re Det. of LaBelle*, 107 Wn.2d 196, 200, 728 P.2d 138 (1986) (clarifying issues concerning the gravely disabled standard of civil commitment statutes).

Here, we are faced with such issues regarding the criminally insane procedures act. RCW 10.77.090 is silent on what burden of proof applies and who must meet that burden to confine a person for treatment. Because of these questions, and the constitutional and sufficiency of evidence challenges to "violent act," we decide these issues.[6]

## BURDEN OF PROOF

■■■ RCW 10.77.090 does not state either what burden of proof governs the issues at a restoration of competency hearing or who bears that burden. Born argues that the proper burden is proof by clear, cogent, and convincing evidence. The State disagrees, arguing that the proper burden is proof by a preponderance of the evidence. We hold that the State bears the burden of proof by a preponderance of the evidence under RCW 10.77.090.

The legislature amended RCW 10.77.090 in 1998.[7] The final bill report indicates that one of the purposes of the legislation was to change the focus to whether the accused poses a danger to public safety or security rather than whether his or her action constituted a felony offense.[8] The same legislation made similar changes to chapter 71.05 RCW, the civil commitment statute.[9]

As to who bears the burden of proof and what the proper burden is, *State v. Wilcox*[10] is instructive. There, Wilcox was charged with first and second degree arson. At trial, both sides stipulated that he was criminally insane when he committed the crimes. Former RCW 10.77.040 (1974) re-

---

[6] We first address a threshold issue. For the first time on appeal, the State argues that the trial court did not err in denying the petition for habeas corpus because the petition did not allege that the failure to accord Born a constitutional right resulted in denial of due process of law. The petition did challenge the sufficiency of the evidence. We exercise our discretion and decline to address this argument.

[7] LAWS OF 1998, ch. 297.

[8] S.B. REP. on Second Substitute S.B. 6214, 55th Leg., Reg. Sess. (Wash. 1998).

[9] *Id.* at 1-2.

[10] 92 Wn.2d 610, 600 P.2d 561 (1979).

quired a determination of whether one acquitted by reason of insanity met any of several criteria.[11] After a hearing on this question, the trial court ordered that Wilcox be committed to Western State Hospital for treatment as a criminally insane person.

On appeal from that order, Wilcox challenged the statute on due process grounds. He argued that the failure of the statute to specify the burden of proof to commit him violated his constitutional right to due process.

The Supreme Court disagreed. The court reaffirmed several constitutional principles, first noting that the commitment of a criminally insane person is a deprivation of liberty that is subject to the guarantee of due process.[12] Second, the court stated that commitment of the criminally insane must be justified on the basis of a legitimate state interest, and the reason for committing an individual must be established in an appropriate proceeding.[13] Third, the court held that the State has the burden of proof of establishing the requirements for confinement.[14] Finally, the court held that, although the statute was silent on the burden of proof, the proper burden was proof by a preponderance of the evidence.[15]

Here, the State properly concedes that it has the burden of proof under RCW 10.77.090. Consistent with the constitutional principles articulated in *Wilcox* for the criminally insane and the standards applied to civil commitment

---

[11] Former RCW 10.77.040 (1974) provided: In deciding whether to release a person acquitted by reason of insanity, the court considered whether (1) he was a substantial danger to other persons, or (2) he presented a substantial likelihood of committing felonious acts jeopardizing public safety or security, and (3) whether it was in the best interests of defendant and others that he be placed in treatment less restrictive than detention in a state mental hospital. *Wilcox*, 92 Wn.2d at 611.

[12] *Wilcox*, 92 Wn.2d at 612.

[13] *Wilcox*, 92 Wn.2d at 612.

[14] *Wilcox*, 92 Wn.2d at 612.

[15] *Wilcox*, 92 Wn.2d at 613-14.

proceedings, this concession is correct.[16] Accordingly, we hold that the State has the burden of proof to establish that a person should be committed for medical treatment and restoration of competency under RCW 10.77.090.

A central point of dispute between the parties is what the proper burden of proof is that the State must meet.[17] RCW 10.77.090 is silent on this point. Again, *Wilcox* is instructive.

There, Wilcox argued that the correct standard was beyond a reasonable doubt or at least clear, cogent, and convincing evidence.[18] The Supreme Court disagreed, holding that under former RCW 10.77.040 proof by a preponderance of the evidence of the statutory elements accords due process to the defendant.[19]

There are important similarities between the statute before the *Wilcox* court and that before us now. Both involve commitment, though for quite different periods of time, of a person deemed to be incompetent. These deprivations of liberty are thus subject to the guarantee of due process. Likewise, both types of commitment must be justified on the basis of a legitimate state interest. As the final bill report states, the 1998 amendments to RCW 10.77.090 changed the focus from how serious the charged crime is to whether an accused poses a threat to public safety. The State has a parens patriae interest both in providing treatment to a mentally ill person and in protecting the public from harmful acts by such a person under this

---

[16] *See also In re Det. of Petersen*, 145 Wn.2d 789, 796, 42 P.3d 952 (2002) (holding that the State bears the burden of proof at a show cause hearing under the sexually violent predator statute, chapter 71.09 RCW); RCW 71.05.310 (State bears burden of proof at hearing on a petition for 90-day civil commitment).

[17] Born does not argue that the State's burden is beyond a reasonable doubt. Such an argument would be wholly unpersuasive in light of *Wilcox*, 92 Wn.2d at 613 (rejecting argument that due process requires use of beyond a reasonable doubt standard in criminally insane commitment proceeding) and *Addington v. Texas*, 441 U.S. 418, 430, 99 S. Ct. 1804, 1811-12, 60 L. Ed. 2d 323 (1979) (rejecting argument that due process requires use of beyond a reasonable doubt standard in civil commitment proceedings).

[18] *Wilcox*, 92 Wn.2d at 613.

[19] *Wilcox*, 92 Wn.2d at 613-14.

statutory framework. In short, there are legitimate state interests here. Finally, the State properly has the burden to prove its case at an appropriate hearing. Given the similarities between the two statutes, we see no persuasive reason to require a higher burden of proof for RCW 10-.77.090 than the state Supreme Court concluded was constitutionally required under former RCW 10.77.040. We are particularly persuaded that this is the appropriate burden of proof given the express statutory safeguards to protect individuals from improper governmental action.[20]

We draw additional support for our conclusion from the legislature's setting of the standard of proof in substantially similar situations involving civil commitment. We note that the legislature made very similar changes to chapter 71.05 RCW when it passed the legislation now before us. RCW 71.05.240 expressly states that preponderance of the evidence is the standard that applies at probable cause hearings to determine whether one may be committed for the limited amounts of time specified in that statute. While the period in question in that statute is 14 days, we conclude that the maximum 29-day period here is more akin to 14-day involuntary treatment than it is to the 90-day period of further treatment that requires a greater standard, clear, cogent and convincing evidence. The state Supreme Court in *In re Detention of LaBelle*,[21] considering the use of the preponderance of the evidence standard in probable cause

---

[20] *See* RCW 10.77.020 (person subject to the statute entitled to the assistance of counsel, and if the person is indigent the court shall appoint counsel to assist him or her; any person subjected to an examination under statute may retain expert to perform an examination in his or her behalf; during examinations defendant entitled to have attorney present; defendant may refuse to answer any question if he or she believes answers may tend to incriminate or form links leading to evidence of an incriminating nature); RCW 10.77.060 (court shall appoint at least two qualified experts or professional persons to examine for competency, custody for examination not to exceed 15 days; court may direct that expert retained by defendant be permitted to witness the examination and that the defendant shall have access to all information obtained by the court appointed experts or professional persons; defendant's expert or professional person shall have right to file report); RCW 10.77.090 (placement for competency restoration shall not exceed 14 days in addition to any unused time of the evaluation under RCW 10.77.060).

[21] 107 Wn.2d 196, 728 P.2d 138 (1986).

hearings, determined that the preponderance of the evidence standard passed constitutional muster.[22] There is no logical reason to distinguish the use of that standard in RCW 10.77.090 for substantially similar purposes.

Born argues that the United States Supreme Court's decision in *Addington v. Texas*[23] requires the application of the clear, cogent, and convincing evidence standard. *Addington* is distinguishable.

In *LaBelle*, the state Supreme Court reviewed the application of the statutory preponderance of the evidence standard at 14-day involuntary commitment hearings under RCW 71.05.240. The court distinguished *Addington* and held that application of the preponderance of the evidence standard comported with the requirements of procedural due process.[24] The court noted that the length of commitment at issue in *Addington* was indefinite, and that the maximum length of commitment under the challenged statute was 14 days. The court recognized the State's "legitimate interest under its police and *parens patriae* powers in protecting the community against dangerously disturbed individuals and in providing care to its citizens who are unable, because of mental illness, to care for themselves."[25]

Born argues that the statute at issue in *LaBelle* is distinguishable because the maximum possible period of confinement under the competency restoration statute is 29 days, rather than 14 days. As stated above, we are not persuaded by this argument. While the 29-day period here is roughly double that of the 14-day period in *LaBelle*, the period here is still substantially less than the 90-day period that requires a higher standard of proof.

We hold that the preponderance of the evidence standard is the proper standard under RCW 10.77.090 for the State to establish that an accused should be committed for

---

[22] *LaBelle*, 107 Wn.2d at 221-23.

[23] *Addington v. Texas*, 441 U.S. 418, 430, 99 S. Ct. 1804, 1811-12, 60 L. Ed. 2d 323 (1979).

[24] *LaBelle*, 107 Wn.2d at 223.

[25] *LaBelle*, 107 Wn.2d at 221.

mental treatment and restoration of competency. *Wilcox*, the legislature's statement of that standard in the substantially similar civil commitment setting of chapter 71.05 RCW, and the Supreme Court's approval of that standard in *LaBelle* support our conclusion.

Born also attempts to distinguish this statute by arguing that the State is not acting under its parens patriae authority. Rather, he argues, the State's interest under the competency restoration statute is in restoring his competency so that the State may try him for his alleged crime. The distinctions that he attempts to draw do not fairly characterize this situation.

While it is true that the State has an interest to restore him to competency for purposes of prosecution, this is not the State's sole interest. The legislature prefaced the bill that created the measure at issue here with the statement that:

> It is the intent of the Legislature to: (1) Clarify that it is the nature of a person's current conduct, current mental condition, history, and likelihood of committing future acts that pose a threat to public safety or himself or herself, rather than simple categorization of offenses, that should determine treatment procedures and level; (2) improve and clarify the sharing of information between the mental health and criminal justice systems; and (3) provide additional opportunities for mental health treatment for persons whose conduct threatens himself or herself or threatens public safety and has led to contact with the criminal justice system.[26]

This statement of purpose shows that the legislature's intent in enacting these provisions included protecting the public through its police powers and providing access to treatment to the accused as an alternative to incarceration. Thus, the State's role is not limited to prosecution.

Born also argues that the statutes are distinguishable because the statute in *LaBelle* required a probable cause

---

[26] Laws of 1998, ch. 297, § 1 (Second Substitute S.B. 6214 amended both chapter 10.77 RCW, Criminally Insane—Procedures, and chapter 71.05 RCW, Mental Illness).

hearing within 72 hours. Our Supreme Court noted this urgency in deciding that the State's ability to gather the necessary evidence would be "severely hampered" if the higher burden of clear and convincing evidence were imposed. But, while the court did note that factor, it was not the sole factor on which it based its decision.

We hold that, in light of persuasive precedent and the procedural protections afforded by RCW 10.77.090, application of the preponderance of the evidence standard at a restoration of competency hearing under the statute fulfills the requirements of procedural due process.

## VIOLENT ACT

Born argues that the superior court improperly determined that his behavior fell within the provisions of the statute. Specifically, he contends that there was insufficient evidence from the incident report to meet the statutory definition of "violent act." We hold that the trial court correctly determined that Born's behavior fell within the provisions of "violent act," as defined by RCW 10.77.010(21)(a)(iii).

RCW 10.77.090(1)(d) states that:

*(i) If the defendant is:*

*(A) Charged with a nonfelony crime and has: (I) A history of one or more violent acts, or a pending charge of one or more violent acts; or (II) been previously acquitted by reason of insanity or been previously found incompetent under this chapter or any equivalent federal or out-of-state statute with regard to an alleged offense involving actual, threatened, or attempted physical harm to a person; and*

*(B) Found by the court to be not competent; then*

*(C) The court shall order the secretary to place the defendant: (I) At a secure mental health facility in the custody of the department or an agency designated by the department for mental health treatment and restoration of competency. The placement shall not exceed fourteen days in addition to any unused time of the evaluation under RCW 10.77.060. The court shall compute*

this total period and include its computation in the order. The fourteen-day period plus any unused time of the evaluation under RCW 10.77.060 shall be considered to include only the time the defendant is actually at the facility and shall be in addition to reasonable time for transport to or from the facility; (II) *on conditional release for up to ninety days for mental health treatment and restoration of competency;* or (III) any combination of (d)(i)(C)(I) and (II) of this subsection.[27]

The italicized portions of the above quotation are at issue in this case.

It is undisputed that Born was charged with a "nonfelony crime" and that the district court found him "to be not competent." At issue is whether the "pending charge [was] of one or more violent acts." To answer that question, the court below was required to examine both the pending charge, unlawful bus conduct, and the evidence supporting that charge.

Born had a pending charge before the district court for unlawful bus conduct. In the complaint, the State charged that Born committed this crime by violating King County Code (KCC) 28.96.010(B). That code provision states that it is a misdemeanor to commit a list of actions, including "Unreasonably disturbing others by engaging in . . . *harmful, abusive or harassing behavior.*"[28] Subject to applying the term "violent act" to the facts of this case, it is arguable that the pending charge falls within the scope of RCW 10.77.090(1)(d)(i)(A).

The parties disagree on the meaning of the term "violent act." RCW 10.77.010(21) states:

"Violent act" means behavior that: (a)(i) Resulted in; (ii) if completed as intended would have resulted in; or (iii) *was threatened to be carried out by a person who had the intent and opportunity to carry out the threat and would have resulted in,* homicide, *nonfatal injuries,* or substantial damage to property;

---

[27] (Emphasis added.)

[28] KCC 28.96.010(B)(7) (emphasis added).

or (b) recklessly creates an immediate risk of serious physical injury to another person.[29]

The statute does not define the term "nonfatal injuries." But, read in the context of the other provisions of the statutory definition of "violent act," particularly "serious physical injury to another person" under subsection (b), the term should be read to mean *serious physical* injuries.[30] This reading is also consistent with the other terms in the same clause as the term "nonfatal injury," "homicide," and "*substantial* damage to property."

Having addressed "nonfatal injury," we turn to RCW 10.77.010(21)(a)(iii). The only evidence presented at the hearing to support the violent act determination was the police incident report, which described Born's behavior:

> . . . [Fremstad, the bus driver] asked Born to get off the bus. Born was sitting at th[e] front on the passenger side. Fremstad had stood up to ask him and Born raised his fist and cocked it back as if to hit Fremstad. He said that you (Fremstad) will take me where I want to go. That he was not getting off. Fremstad asked him twice and both times Born raised his fist and said he was not getting off the bus. Fremstad was concerned that Born would hit him. He felt that Born might have some mental issues. . . .

Born argues that this does not provide sufficient evidence to conclude that his actions constituted a "violent act." Implicit in this argument is the assumption that we approach sufficiency from the standard applicable to criminal convictions. But we need not ask whether the evidence here is sufficient to support a conviction for a violent act. Rather, we need only determine whether the trial court properly determined from the stipulated facts that the pending charge against Born was for a "violent act" under the statute. We conclude that it did.

---

[29] (Emphasis added.)

[30] Each provision within a statute must be viewed in relation to other provisions and harmonized, if at all possible, to ensure proper construction of every provision. *State v. Thorne*, 129 Wn.2d 736, 921 P.2d 514 (1996).

Born's behavior constituted a threat to punch the driver if he did not take Born where he wanted to go. The report states that Born twice raised his fist and cocked it back as if to hit the driver. This behavior was accompanied by Born's demand that the driver take him where he wanted to go and his refusal to get off the bus. The report also states that the driver was concerned that Born would hit him. Thus, Born's behavior constituted a threat and evidenced an intent to carry out that threat.

The remaining question is whether there would have been nonfatal injury. The Washington Pattern Jury Instructions: Criminal (WPIC) define "substantial bodily harm" as "bodily injury that involves a temporary but substantial disfigurement, or that causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or that causes a fracture of any bodily part."[31] As this court has noted in the past, "punching someone in the face could result in a broken jaw, nose, or teeth, each of which would constitute substantial bodily harm."[32] Any of these injuries would also constitute serious physical harm. We see no meaningful difference between "serious" and "substantial" for purposes of defining what behavior constitutes a "violent act" under the statute for these purposes.

Born argues that there is insufficient evidence that he could have caused such injury to a standing driver from a seated position. This is not convincing. The report indicates that he was seated, but it also indicates that he was within striking distance of the driver. Born does not dispute the case authority or the examples from the WPIC that establish that serious injury would result if a person struck another after the type of threat evidenced here. In short, we hold that Born's actions constituted a threat to strike the driver, evidenced the intent to complete that act, and would have caused serious physical harm if completed as intended.

[31] WPIC 2.03.01.

[32] *State v. R.H.S.*, 94 Wn. App. 844, 847, 974 P.2d 1253 (1999).

Because we hold that Born's behavior constituted a violent act under RCW 10.77.010(21)(a)(iii), we need not reach the issue of whether Born's act was also a violent act under RCW 10.77.010(21)(a)(ii).[33]

## VAGUENESS

 Born next challenges the statute on constitutional grounds, arguing that the term "nonfatal injury" is unconstitutionally vague. Again, we disagree.

When a challenged statute does not involve First Amendment rights, this court evaluates the statute in light of the particular facts of the case.[34] "[I]mpossible standards of specificity" or "mathematical certainty" are not required because some degree of vagueness is inherent in the use of language.[35] "The issue of vagueness involves the procedural due process requirements of fair notice of the conduct warranting detention and clear standards to prevent arbitrary enforcement by those charged with administering the applicable statutes."[36] A statute is presumed to be constitutional, and the party challenging it carries the burden of proving beyond a reasonable doubt that the statute is unconstitutional.[37]

Born argues that the term "nonfatal injury" is impermissibly vague because the word "injury" is used to refer to a variety of nonphysical types of injury. Born suggests that the term could mean emotional injuries, injury to property, or economic loss. This reading is unpersuasive.

The statute lists homicide, nonfatal injuries, and property damage as the types of results of defined behavior that

---

[33] An appellate court can sustain the trial court's judgment upon any theory established by the pleadings and supported by the proof, even if the trial court did not consider it. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027, *cert. denied*, 493 U.S. 814 (1989).

[34] *State v. Halstien*, 122 Wn.2d 109, 117, 857 P.2d 270 (1993).

[35] *Halstien*, 122 Wn.2d at 118.

[36] *LaBelle*, 107 Wn.2d at 201.

[37] *Det. of C.W.*, 147 Wn.2d at 277.

the statute seeks to preclude. It would be clear to a person of ordinary intelligence that the term "nonfatal injury" in the context of the listed terms refers to nonfatal *physical* injury, not something else. As we have construed the term nonfatal injury in a previous portion of this opinion, the statute provides fair notice of the conduct warranting detention. Moreover, Born does not argue that, on the facts of this case, nonfatal injury of any sort other than physical harm was at issue.

For these reasons, we reject his arguments that the statute is unconstitutionally vague.

We affirm the order denying the writ of habeas corpus.

COLEMAN and GROSSE, JJ., concur.

Review granted at 150 Wn.2d 1025 (2004).