# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>RODMAN ALFRED WIDING,<br><br>Appellant. | No. 50467-7-II<br><br>UNPUBLISHED OPINION |

MAXA, C.J. – Rodman Widing appeals the trial court's order of commitment to Western State Hospital following the court's ruling that he was not guilty by reason of insanity for charges of first and second degree assault. The charges arose from a psychotic episode in which he choked his wife, Athena Meisenheimer. Widing claimed that his psychosis was temporary and was caused by copper toxicity and acute renal failure. The trial court ordered Widing's commitment based on a finding that he presented a substantial danger to other people unless kept under control.

Initially, we decline to consider Widing's argument that Patricia Rice, Ph.D., a psychologist, was not qualified to give an expert opinion regarding copper toxicity because Widing did not object to that testimony in the trial court. We hold that (1) substantial evidence supports the trial court's finding that Widing presented a substantial danger to others unless kept under further control, and (2) Widing did not receive ineffective assistance of counsel when

defense counsel failed to object to Dr. Rice's testimony regarding copper toxicity because Widing cannot show prejudice.

Accordingly, we affirm the trial court's order committing Widing to Western State Hospital.

FACTS

In June 2015, Meisenheimer noticed that Widing was acting strangely. Widing seemed to be hallucinating or in some type of psychotic episode. Meisenheimer thought that Widing's behavior related to his use of marijuana.

Widing subsequently pinned Meisenheimer down on the bed and choked her until she lost consciousness. When Meisenheimer regained consciousness she managed to call the police.

When the responding deputies arrived Widing was running around, eating handfuls of dirt and grass and yelling for the officers to kill him. Widing was sedated and taken to the hospital for evaluation. He was experiencing acute renal failure and elevated levels of copper in his urine.

The State charged Widing with first degree assault and second degree assault, both with a domestic violence aggravator. Widing pleaded not guilty by reason of insanity.

*Acquittal by Reason of Insanity*

Widing filed a motion for acquittal by reason of insanity. In considering the motion, the trial court heard testimony from Rice; Dr. Raymond Singer, a neuropsychologist and neurotoxicologist; Dr. Loren Keith French, a physician at the hospital that treated Widing; and Dr. David Predmore, a forensic toxicologist. The court also considered reports from Dr. Rice and Dr. Jerry Larsen, a psychiatrist.

Dr. Rice evaluated Widing's mental condition and submitted a forensic mental health report. She concluded that Widing was insane at the time of the offense and was unable to tell right from wrong with respect to his assault on Meisenheimer.

Dr. Rice formed the diagnostic impression that Widing suffered from brief psychotic disorder, unspecified bipolar disorder or other related disorder with manic episode, with mood congruent psychotic features. However, the other medical experts provided alternative diagnoses. Dr. Larsen concluded that Widing had suffered from psychosis as a result of his acute renal failure. Dr. Singer concluded that Widing had experienced psychosis related to copper toxicity. And Dr. French and Dr. Predmore testified that Widing's psychosis was not the result of voluntarily ingesting any substances.

After receiving evidence, the trial court heard argument on Widing's motion. The court acquitted Widing of the charged crimes because of insanity.

*Commitment to Western State Hospital*

The trial court then addressed whether Widing should be involuntarily committed to Western State Hospital. Dr. Rice engaged in further assessment and prepared a report evaluating Widing's risk for future danger to others.

Dr. Rice's initial forensic mental health evaluation concluded that Widing's risk for future dangerousness to others was medium to low. However, Dr. Rice later consulted with colleagues and amended her report. Dr. Rice's amended report concluded that Widing's risk for future dangerousness to others was high.

In particular, Dr. Rice stated that although Widing was unable to tell right from wrong during the attack, he demonstrated a capacity to contain and direct his actions and act purposefully to achieve his intended outcomes within the context of his delusional beliefs. Dr.

3

Rice also stated that Widing's behavior during the attack was far beyond normal behavior for either the general population or the population of people with mental disorders. Dr. Rice noted that Widing's lack of insight into the specific cause of his psychosis could increase Widing's risk because he might be unwilling to acknowledge that he had a significant mental disorder.

In addressing whether Widing should be involuntarily committed, the trial court considered the evidence presented in the previous proceedings. The court also heard further testimony from Dr. Rice about her amended report. Dr. Rice stated that she had initially overvalued the fact that Widing was doing well out of custody. She stated that upon reconsideration Widing presented a high risk because the offenses he committed while insane were beyond the norm for any population, the circumstances of his personal life suggested a higher risk, and he had a history of substance abuse issues.

The trial court found that Widing presented a substantial danger to other people unless kept under further control. This conclusion was based on the severity of the charged offenses and the lack of clarity about the underlying cause of his insanity. The court stated in its oral ruling that Widing had proposed continuing with his current course of treatment as an alternative to hospitalization. However, the court ruled that given the seriousness of the offense, the current course of treatment did not have enough supervision. Therefore, the court ruled that Widing should be placed in treatment at Western State Hospital, and entered an order of commitment.

Widing appeals the trial court's commitment order.

## ANALYSIS

A.    ADMISSIBILITY OF DR. RICE'S EXPERT TESTIMONY

Widing argues that the trial court erred under ER 702 by admitting Dr. Rice's expert testimony at the commitment hearing that it was highly improbable that copper toxicity was the

cause of his psychosis. He argues that, as a psychologist, Dr. Rice was not qualified to give expert opinions on toxicity. We decline to consider this argument.

Widing did not challenge the admissibility of Dr. Rice's expert opinion testimony on toxicology in the trial court. Under RAP 2.5(a), we generally will not review claims raised for the first time on appeal. *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). However, RAP 2.5(a)(3) permits a party to raise such a claim if the issue amounts to a "manifest error affecting a constitutional right." To determine whether we consider an unpreserved error under RAP 2.5(a)(3), we inquire whether (1) the error is truly of a constitutional magnitude, and (2) the error is manifest. *Kalebaugh*, 183 Wn.2d at 583.

The trial court's erroneous admission of expert testimony under ER 702 does not necessarily implicate a defendant's constitutional rights. *See State v. Barr*, 123 Wn. App. 373, 380, 98 P.3d 518 (2004). And Widing does not argue that a constitutional right was implicated. Accordingly, we decline to consider Widing's ER 702 challenge.

B.    FINDING OF SUBSTANTIAL DANGER TO OTHERS

Widing argues that the trial court erred by finding that he presented a substantial danger to others unless kept under further control. He claims that substantial evidence does not support the court's finding. We disagree.

1.    Legal Principles

RCW 10.77.110(1) states that the trial court must order the hospitalization or appropriate alternative treatment of a defendant who is acquitted by reason of insanity "[i]f it is found that such a defendant is a substantial danger to other persons, or presents a substantial likelihood of committing criminal acts jeopardizing public safety or security, unless kept under further

control." However, if the defendant is acquitted and found not to be a substantial danger to others, the trial court must release the defendant. RCW 10.77.110(1).

Under this statute, to involuntarily commit an insanity acquittee the trial court must find that the acquittee suffers from a mental illness and is a danger to others. *State v. Beaver*, 184 Wn.2d 321, 332, 358 P.3d 385 (2015). The State bears the burden of proving that the defendant presents a substantial danger to others. *State v. Wilcox*, 92 Wn.2d 610, 612-14, 600 P.2d 561 (1979). Whether an insanity acquittee presents a substantial danger to others is a question of fact.[1] *State v. Klein*, 156 Wn.2d 102, 121, 124 P.3d 644 (2005). Further, "[w]e generally do not substitute our judgment for that of the trier of fact regarding issues of conflicting expert testimony." *Id.*

We review a trial court's findings on substantial danger to determine if substantial evidence supports those findings. *See State v. Chanthabouly*, 164 Wn. App. 104, 128-29, 262 P.3d 144 (2011) (addressing findings for insanity acquittal). Unchallenged findings of fact are verities on appeal. *Id.* at 129.

2. Analysis

    a. Substantial Danger to Others

The trial court found that "Dr. Rice authored an amendment to her initial report that assessed the defendant as having a high risk of future dangerousness to others." Clerk's Papers (CP) at 77. Widing does not challenge this finding. He does challenge a related finding that Dr. Rice's amended report concluded that "the defendant's risk of future dangerousness to others

---

[1] Contrary to *Klein*, the trial court entered conclusions of law stating that Widing presented a danger to others. Where a trial court erroneously labels a conclusion of law that is properly considered as a finding of fact, this court treats the conclusion as a finding of fact. *State v. Marcum*, 24 Wn. App. 441, 445, 601 P.2d 975 (1979). Accordingly, we review the trial court's conclusion of law as a question of fact.

was high." CP at 77. And he challenges the court's finding that Widing presented a "substantial danger to other persons unless kept under further control."[2] CP at 78.

As the trial court found, Dr. Rice's initial evaluation was that Widing's risk for future dangerousness to others was medium to low. But the evidence was undisputed that Dr. Rice stated in her amended report that Widing presented a high risk because of the serious nature of the offense. And Dr. Rice explained in her testimony why she amended her report. This evidence supports the trial court's factual finding that Dr. Rice's amended report stated that Widing's risk of future dangerousness to others was high. And that evidence also supports the trial court's finding that Widing presented a substantial danger to other persons unless kept under further control.

Widing argues that the record does not support the trial court's findings regarding Dr. Rice's opinions because Dr. Rice's opinions were based on her use of the Historical Clinical Risk Management–20 instrument. He claims that because the record does not contain Rice's methodology, the support for Rice's conclusions is vague. But Widing does not argue that Rice's methodology makes her report inadmissible, only that the trial court should not have relied on Rice's report. We do not weigh evidence. *See State v. Monaghan*, 166 Wn. App. 521, 534, 270 P.3d 616 (2012).

We conclude that substantial evidence supports the trial court's findings that Dr. Rice's amended report stated that Widing's level of future dangerousness was high and the finding that Widing presented a substantial danger to others unless placed under further control.

---

[2] The trial court stated this finding as a conclusion of law. But as stated above, the determination of whether Widing presented a substantial danger to other persons is a question of fact. *Klein*, 156 Wn.2d at 121.

Accordingly, we hold that the trial court did not err in ordering that Widing be committed to Western State Hospital under RCW 10.77.110(1).

        b.    Additional Challenged Findings

Widing challenges findings of fact 21 and 24 in his assignments of error. Finding of fact 21 states, "Dr. Singer's lack of experience undercuts the Court's confidence in his risk assessment and the Court is not convinced the defendant's behavior at the time of this event was caused solely by copper toxicity." CP at 77. Finding of fact 24 states, "The alternative program proposed by defense appears to lack the necessary structure." CP at 77.

However, Widing provides no substantive argument to support his claims and did not include the proposed alternative program in the record. We may decline to consider claims that a party does not argue in its briefs. *See State v. Bello*, 142 Wn. App. 930, 932 n.3, 176 P.3d 554 (2008). And as the appellant, Widing is responsible for designating the necessary portions of the record for review. RAP 9.6(a); *State v. Drum*, 168 Wn.2d 23, 38-39 n.3, 225 P.3d 237 (2010). Therefore, we decline to consider Widing's challenge to finding of fact 21 or 24.[3]

C.    INEFFECTIVE ASSISTANCE OF COUNSEL

Widing argues that he received ineffective assistance of counsel because defense counsel did not challenge Rice's qualification to testify about whether copper toxicity contributed to his psychosis. He argues that if defense counsel had challenged that testimony and that portion of Rice's report the trial court would have found that he was not a substantial danger to others. We hold that even if defense counsel was deficient, Widing cannot show prejudice.

---

[3] In any event, substantial evidence supports these findings. Both findings relate to the trial court's assessment of the evidence, and we will not second guess such an assessment. *See Monaghan*, 166 Wn. App. at 534.

Ineffective assistance of counsel is a constitutional error, arising from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). Persons subject to commitment proceedings are entitled to effective assistance of counsel. *In re Det. of T.A.H.-L.*, 123 Wn. App. 172, 179, 97 P.3d 767 (2004).

To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Estes*, 188 Wn.2d at 457-58. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 458. Prejudice exists if there is a reasonable probability that, except for counsel's errors, the result of the proceeding would have been different. *Id.*

Here, even if defense counsel's performance was deficient, there was no prejudice. Dr. Rice did not provide a strong testimony regarding copper toxicity. Under direct questioning by the trial court, she specifically declined to give an opinion on whether Widing had experienced copper toxicity. She did not testify about the results of Widing's copper toxicity evaluations or offer an opinion on whether Widing had experienced copper toxicity. Dr. Rice stated only that copper toxicity was one possible contributing factor to Widing's psychosis, but that given all the other possibilities her opinion was that it was highly improbable.

Further, the trial court did not rely on Dr. Rice's testimony in determining that Widing's psychosis was not based on copper toxicity. The court made no findings regarding that testimony. And the court did not find Dr. Singer's testimony that copper toxicity caused Widing's psychotic state to be credible. The court made the following findings:

> 20. Dr. Singer, by his own admission, hadn't been studying the issue of copper toxicity very long.

9

21. Dr. Singer's lack of experience undercuts the Court's confidence in his risk assessment and the Court is not convinced the defendant's behavior at the time of this event was caused solely by copper toxicity.

CP at 77.

Widing has not shown that but for defense counsel's failure to object to Dr. Rice's copper toxicity testimony, there was a reasonable probability that the trial court's ruling would have been different. Accordingly, we hold that Widing's claim of ineffective assistance of counsel fails.

## CONCLUSION

We affirm the trial court's order committing Widing to Western State Hospital.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, C.J.

We concur:

_____
LEE, J.

_____
MELNICK, J.