85 P.3d 944 (2004)
120 Wash.App. 402
Martin WEISS, Appellant,
v.
Steven THOMPSON, Honorable Arthur Chapman, and City of Seattle, Respondents.
No. 53018-6-I.
Court of Appeals of Washington, Division 1.
March 8, 2004.
*945 Christine A. Jackson, Kimberly N. Gordon, The Public Defender, Seattle, WA, for Appellant.
*946 Richard E. Greene, Seattle, WA, for Respondent.
COLEMAN, J.
Under RCW 10.77.090(1)(D)(i)(C), incompetent misdemeanor defendants can be placed at a mental health facility for competency restoration treatment for up to 14 days, excluding reasonable time for transport. Martin Weiss petitioned for a writ of habeas corpus, claiming that his substantive due process rights were violated when, in addition to the 14 days he was treated at Western State Hospital (WSH), he was detained for 15 days at county jail before receiving treatment due to a lack of bed space at WSH. He argued that such a delay does not constitute reasonable time for transport. The trial court denied his petition because he had not yet pursued an appeal in his criminal case.
We conclude that the trial court erred in denying Weiss's application for habeas corpus relief because such relief is not conditioned on appealing his criminal conviction. There was no constitutional violation, however, because the delay in commencing treatment was not excessive when balanced against the governmental interests in restoring incompetent defendants and bringing accused persons to trial.

FACTS
On June 26, 2002, the City of Seattle charged Martin Weiss in Seattle Municipal Court with two counts of second degree criminal trespass and one count of obstruction of a public servant. On August 6, Weiss was found incompetent to stand trial and ordered to be placed for mental competency restoration treatment at WSH. Because WSH lacked open bed space, he was not transported from King County jail to WSH until August 21, 15 days after the municipal court had ordered treatment. At a competency hearing on August 22, defense counsel informed the court of the delay and moved to dismiss for failure to comply with the RCW 10.77.090(1)(d)(i)(C) 14-day time period for competency treatment. The court denied the motion to dismiss.
Weiss filed an application for a writ of habeas corpus on August 26, seeking immediate release and dismissal of the criminal charges against him. The next day, the trial court denied the application. On September 4, 14 days after Weiss was admitted to WSH, he was returned to King County jail. He renewed his motion to dismiss the criminal charges for violation of RCW 10.77.090(1)(d)(i)(C). After hearing evidence regarding the reasons for the delay, the court again denied the motion. Weiss was convicted of second degree criminal trespass. The issue presented on appeal is whether the trial court erred in denying Weiss's application for a writ of habeas corpus.

DECISION
RCW 7.36.010 provides, "Every person restrained of his liberty under any pretense whatever, may prosecute a writ of habeas corpus to inquire into the cause of the restraint, and shall be delivered therefrom when illegal." Weiss filed an application for a writ of habeas corpus, citing this provision as the authority for his application. At the time of filing, Weiss was receiving court-ordered competency restoration treatment at WSH. Weiss alleged that he was unlawfully detained because the 14-day period for treatment permitted by RCW 10.77.090(1)(d)(i)(C) had expired. The trial court denied the petition, stating that a writ of habeas corpus was not appropriate to review another court's decision denying Weiss's motion to dismiss. It further stated that an appeal would be an adequate remedy.
The City of Seattle argues that the trial court's decision was correct because Weiss argued his petition by referencing the court's authority to issue constitutional writs, including writs of certiorari, and because he specifically challenged the denial of his motion to dismiss for violation of RCW 10.77.090(1)(d)(i)(C). Thus, the City argues, Weiss improperly sought review of another court's decision. We disagree.
Weiss's petition, titled, "Application for Writ of Habeas Corpus, Certification, and Memorandum in Support of Application," relied upon the habeas corpus statute, chapter *947 7.36 RCW. Weiss sought a writ of habeas corpus in part because it was his sole means of obtaining immediate release from his allegedly illegal detention. The City's argument that Weiss has not established a violation of due process for the purpose of habeas corpus relief is at odds with its concession that his liberty was restrained. Incapacitated criminal defendants have liberty interests in freedom. Oregon Advocacy Ctr. v. Mink, 322 F.3d 1101, 1121 (9th Cir.2003).
Our Supreme Court has held that pursuing postconviction relief is not a precondition of petitioning for a writ of habeas corpus. Toliver v. Olsen, 109 Wash.2d 607, 610, 746 P.2d 809 (1987). If Weiss's detention was unconstitutional, he was entitled to immediate habeas corpus relief. But while an appeal is not a prerequisite for seeking a writ of habeas corpus, only an appeal can be used to collaterally attack a court order. In re Newcomb, 56 Wash. 395, 396-97, 105 P. 1042 (1909). Accordingly, issuance of a writ of habeas corpus cannot result in one of the remedies sought by Weissdismissal of the criminal charges against him.
Weiss contends that his detention was unconstitutional because his competency was not restored within the statutory 14-day period. RCW 10.77.090(1)(d)(i)(C) permits the court to order treatment of incompetent misdemeanor defendants as follows:
The court shall order the secretary [of DSHS] to place the defendant: (I) At a secure mental health facility in the custody of the department or an agency designated by the department for mental health treatment and restoration of competency. The placement shall not exceed fourteen days in addition to any unused time of the evaluation under RCW 10.77.060. The court shall compute this total period and include its computation in the order. The fourteen-day period plus any unused time of the evaluation under RCW 10.77.060 shall be considered to include only the time the defendant is actually at the facility and shall be in addition to reasonable time for transport to or from the facility; (II) on conditional release for up to ninety days for mental health treatment and restoration of competency; or (III) any combination of (d)(i)(C)(I) and (II) of this subsection.
If competency has not been restored by the end of the mental competency restoration period, the charges are dismissed and the defendant is referred for evaluation under the procedures for civil commitment. RCW 10.77.090(1)(d)(ii).
Weiss argues that RCW 10.77.090(1)(d)(ii) unambiguously requires dismissal of the charges and his release because his competency was not restored within 14 days of August 6, when the municipal court stayed the proceedings and ordered competency restoration treatment.[1] His argument fails because the plain, unambiguous language of the statute provides that the 14-day period for mental competency restoration applies only to the time the defendant is actually placed at a facility for treatment.
Unambiguous statutes do not require interpretation. Davis v. Dept. of Licensing, 137 Wash.2d 957, 963, 977 P.2d 554 (1999). The statute authorizes the court to order the secretary to place the defendant at a secure mental health facility, then it provides that the "placement" shall not exceed 14 days. The statute also states, "The fourteen-day period ... shall be considered to include only the time the defendant is actually at the facility and shall be in addition to reasonable time for transport to or from the facility." RCW 10.77.090(1)(d)(i)(C). Because Weiss's detention at WSH did not exceed 14 days, there was no violation of RCW 10.77.090(1)(d)(i)(C).[2] Time spent at King County jail waiting for open bed space does *948 not qualify as placement in a secure mental health facility.
The parties dispute whether the delay caused by the lack of open beds at WSH can constitute "reasonable time for transport to or from the facility." The meaning of "reasonable time for transport" is ambiguous because in the context of the cited statute, it could mean travel time alone or the time required to arrange and conduct transport. When a statute is ambiguous, it must be construed to effectuate the legislatures intent. Davis, 137 Wash.2d at 963, 977 P.2d 554. The latter interpretation is the most logical. Daily transportation is not an option for most, if not all, counties sending patients to and retrieving patients from WSH. As a practical matter, it makes little sense to allow 14 days for placement at the treatment facility, but provide only a few hours for transportation, depending on the distance to be traveled. Thus, reasonable time for transport must be interpreted more broadly than simply the time required to travel from one place to another. But we agree with Weiss that the wait for bed space is not a transportation issueit is a capacity issue. For that reason, it does not qualify as "reasonable time for transport." We therefore look beyond the plain text of the statute to determine whether a due process violation occurred.
The proper test for determining whether there has been a substantive due process violation is to balance the individual's interest in liberty against the State's asserted reasons for restraining individual liberty. Youngberg v. Romeo, 457 U.S. 307, 321, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (quoting Poe v. Ullman, 367 U.S. 497, 542, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (Harlan J. dissenting)). Weiss relies upon a recent Ninth Circuit decision holding that incompetent defendants' due process rights were violated when they were held in jail for weeks and months at a time before being transferred for mental competency restoration treatment under an Oregon statute. Oregon Advocacy Ctr. v. Mink, 322 F.3d 1101 (9th Cir.2003). The Ninth Circuit affirmed a trial court injunction directing the transfer to take place within seven days.[3]Mink, 322 F.3d at 1122. But Mink is not persuasive because its facts are clearly distinguishable.
In Mink, the court found that "the detention of incapacitated criminal defendants for weeks or months in Oregon county jails is an ongoing, pervasive and systemic problem." Mink, 322 F.3d at 1117. "[D]uring 2001 and early 2002 incapacitated criminal defendants spent on average about one month in county jails before [Oregon State Hospital] OSH accepted them for the requisite evaluation and treatment. In many cases, defendants had to wait two, three or even five months." Mink, 322 F.3d at 1117. The named defendant in Mink was held for 23 days before being transported for mental competency evaluation and treatment. On the basis of this evidence, the trial court imposed an injunction requiring OSH to accept patients within seven days of entry of a court order requiring the transfer. The Ninth Circuit affirmed, noting that "the nature and duration of their incarceration bear[s] no reasonable relation to the evaluative and restorative purposes for which courts commit those individuals." Mink, 322 F.3d at 1122.
In contrast, Weiss was detained in jail for only 15 days due to the lack of open beds at WSH. The evidence before the trial court indicated that WSH experienced an unusual surge in demand in August that, due to budget cuts and a federal court order restricting capacity, resulted in delays in admitting patients to WSH. After the habeas corpus petition was denied, Weiss again sought dismissal of the charges from the municipal court that initially denied his motion to dismiss. That court heard two days of more detailed evidence regarding the circumstances that led to the delay in admitting him. The Supreme Court, before declining direct review in this matter, did not formally allow *949 the record to be supplemented with this evidence. The parties were, however, granted permission to summarize it in their briefs, and we take it into consideration for the purposes of deciding this appeal.
In August 2002, there was an unexpected surge in demand for restoration treatment. At the evidentiary hearing, two WSH employees testified that delays were encountered as the result of an escape during the summer of 2002 and a move to a new facility in May 2002. In addition, WSH's capacity was limited by a federal court order requiring strict compliance with capacity limits. WSH staff implemented several changes to alleviate the delays, including prioritizing restorations over evaluations, investigating options for outpatient treatment, and transferring eligible patients to lower security wards. WSH opted to evaluate the success of these changes before seeking additional funding for increased capacity. By the end of September 2002, the waiting list for restoration treatment was zero and significantly reduced for competency evaluations.
Unlike the OSH policies that systemically denied timely restoration treatment to incompetent defendants in Mink, these facts do not show that there is an ongoing, pervasive problem with transferring defendants to WSH in a timely manner. This case is also quite different from Mink procedurally. The remedy sought in Mink was not release and dismissal of charges, but rather injunctive relief compelling immediate transportation to OSH for restoration treatment. In addition, the trial court evidentiary records differ substantially. In order to show that injunctive relief was warranted, the Mink plaintiffs presented substantial evidence of a pervasive, ongoing failure to timely transport incompetent defendants to facilities where they could receive competency restoration treatment. Here, due to the nature of habeas corpus proceedings, the trial court record was limited to showing that there was a delay in transporting Weiss and the reasons for that delay. To the extent evidence was presented showing that other patients were also delayed admission to WSH for restoration treatment, WSH employees testified that there were no delays by the end of September 2002.[4] In sum, the Mink decision presented a better developed factual record of repeated, lengthy delays that warranted injunctive relief.
Admittedly, when the court stayed the criminal proceedings against Weiss, his custodial status was unclear. Weiss argues that the short period of time allowed for restoration treatment reflects the legislatures concern for limiting the time defendants are detained, but this time period must be examined in context. Although Weiss's 15-day detention before beginning restoration treatment exceeded the time for treatment, it is a fraction of the time he had already spent in custody since charges were filed on June 26, 2002.
The City argues that Weiss's detention was caused by his inability to post bail, but this issue is neither timely raised nor relevant. The question presented is not whether it was lawful to detain Weiss before he was found incompetent, but rather whether some period of detention was lawful after that finding was made. The answer to this question requires a balancing of the individual's interests in liberty against the government's interests.
Although individuals have rights to liberty, the government has legitimate interests in bringing accused persons to trial and protecting the public from arrested persons who present a demonstrable threat to the community. United States v. Salerno, 481 U.S. 739, 749-50, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). See also Born v. Thompson, 117 Wash.App. 57, 69 P.3d 343 (2003), petition for review granted, No. 74126-3 150 Wash.2d 1025, 82 P.3d 242 (Wash. Jan. 7, 2004) (holding that the legislatures intentions in adopting *950 14-day restoration provisions include: (1) restoration for purposes of prosecution; (2) protecting the public through its police powers; and (3) providing the accused with access to treatment as an alternative to incarceration). Where a time period for treatment is not identified by the legislature, the remedy of habeas corpus should be used on a case by case basis to address concerns about the constitutionality of detentions.
Although it is not disputed that Weiss's liberty was restrained during the delay, the time of restraint was not much more than the seven-day deadline imposed for Oregon defendants to cure institutional policies that resulted in constitutional violations.[5] And when the facts of this case are viewed in context, the total deprivation of liberty for Weiss was minimal when weighed against the governments significant and legitimate interests in detaining him for a reasonable time until a bed became available at WSH. By our disposition in this case, we do not mean to suggest that ongoing, systemic problems with delayed transportation could not be remedied by means of a habeas corpus petition, injunctive relief, or such other relief as may be warranted. On the basis of the limited record before this court, however, there is no evidence that the delay was onerous, prejudicial, or unnecessary. We therefore conclude that Weiss's detention was not unconstitutional and he was not entitled to habeas corpus relief.
We affirm the dismissal of the petition, although on alternate grounds than relied upon by the trial court.
BAKER and SCHINDLER, JJ., concur.
NOTES
[1] Upon a finding of incompetence, RCW 10.77.090(1)(a) provides for an immediate stay of proceedings:

If at any time during the pendency of an action and prior to judgment the court finds, following a report as provided in RCW 10.77.060, a defendant is incompetent the court shall order the proceedings against the defendant be stayed except as provided in subsection (7) of this section.
[2] The 15 days allowed for evaluation under RCW 10.77.060 are not at issue on appeal because they had been depleted before restoration treatment was ordered.
[3] The previous version of the statute analyzed in Mink contained a seven day transfer period and formed the basis for the seven-day deadline in the trial court's injunction. Mink, 322 F.3d at 1122 n. 9. The City correctly points out that the Washington statute is silent on the amount of time that can elapse between entry of the order for competency restoration and the time placement actually occurs.
[4] Weiss's counsel suggested at oral argument that the evidence of frequent and ongoing delays is contained in several declarations submitted to the Supreme Court, but these declarations, which were submitted in response to a motion on a separate issue, were not included in Weiss's motion to supplement the record. These declarations were not before the trial court hearing the habeas corpus petition, and they were not presented in connection with either of Weiss's motions to dismiss. In any event, such evidence needs to be presented to a trial court for fact-finding in a setting where the record and issues can be fully developed.
[5] Weiss argues that the time for treatment began to run when the order for treatment was entered, but he offers no explanation why this court should allow far less transfer time than the Ninth Circuit permitted in Mink, which involved longer delays in transferring defendants.