117 P.3d 1098 (2005)
Mark BORN, Petitioner,
v.
Steve THOMPSON, Director of King County Jail; The Honorable Mark Chow, King County District Court, Seattle Division, and
State of Washington, Respondents.
No. 74126-3.
Supreme Court of Washington, En Banc.
Argued June 30, 2004.
August 4, 2005.
*1099 Christine Anne Jackson, The Public Defender's Office, Seattle, for Petitioner.
Deanna Jennings Fuller, Cristy J. Craig, King County Prosecutor's Office, Seattle, for Respondents.
MADSEN, J.
¶ 1 Petitioner Mark Born challenges the Court of Appeals' holding that the standard of proof necessary to detain an individual under RCW 10.77.090(1)(d)(i) for restoration of competency to stand trial for certain misdemeanors is by a preponderance of the evidence. We hold that due process requires that proof must be by clear and convincing evidence and that under this standard the State did not prove that Mr. Born was charged with a violent act as required for commitment for competency restoration under RCW 10.77.090(1)(d)(i).

Facts
¶ 2 The parties have agreed to the facts contained in a King County Sheriff's Office incident report describing Mr. Born's alleged offense. On May 31, 2001, Born was riding a bus that had completed its route. The driver stood up and asked Born, who was "seated at the front on the passenger side" of the bus, to get off. Clerk's Papers (CP) at 8. Mr. Born raised his fist and cocked it back as if to hit the driver and told the driver that he would take him, Born, where he wanted to gohe was not getting off. The driver twice asked Mr. Born to leave the bus, and twice Mr. Born responded in the same way. The driver was concerned that Born would hit him and "felt that Born might have some mental health issues." Id. The bus driver got off the bus and called for assistance. The Seattle Police Department responded and Mr. Born was arrested and charged with unlawful bus conduct for exhibiting harassing behavior, a misdemeanor under King County Code (KCC) 28.96.010(B)(7).[1]
¶ 3 At arraignment, the district court inquired into Mr. Born's competence to stand trial, and then ordered an evaluation of Born's competency.[2] The court subsequently *1100 reviewed the written evaluation and the police incident report and concluded that Mr. Born was incompetent and the pending charge alleged a violent act. Under RCW 10.77.090(1)(d)(i), a court may stay a misdemeanor prosecution and commit the defendant for mental health treatment and competency restoration if he or she is charged with "one or more violent acts" and a court has found the defendant incompetent.[3] Accordingly, the court ordered that Born be sent to Western State Hospital for treatment and competency restoration.
¶ 4 Mr. Born immediately filed a habeas corpus petition in superior court, arguing that the State had not proved that the facts contained in the police incident report supported the trial court's determination that he had been charged with a violent act.[4] The commitment order was stayed pending the hearing on the petition for the writ. At the hearing, the parties agreed that the superior court could proceed based on the facts stated in the police incident report. The superior court held that under either a preponderance of the evidence standard or a clear and convincing standard the pending charge alleged a violent act as defined by RCW 10.77.010(21). The court denied the application for a writ and lifted the stay. Mr. Born was transferred to Western State Hospital.[5]
¶ 5 Mr. Born appealed. The Court of Appeals initially noted the parties' dispute about whether the issues raised were moot given that Born's commitment for competency restoration had ended, and concluded that even if the case was moot, review was appropriate because the issues raised involve matters of continuing and substantial public interest. Born v. Thompson, 117 Wash.App. 57, 63, 69 P.3d 343 (2003). The Court of Appeals affirmed the superior court's denial of the writ, holding that the standard of proof is by a preponderance of the evidence and the evidence established that Born was charged with a violent act.

Analysis
¶ 6 RCW 10.77.090(1)(d)(i) does not contain a standard of proof. Mr. Born argues that to satisfy due process concerns the standard of proof the State must meet under the statute is proof by clear and convincing evidence.[6] We agree.
¶ 7 Determining the standard of proof that applies for civil commitment is a due process inquiry that requires a court to balance the interests at stake and consider the risk of an erroneous decision:
In considering what standard should govern in a civil commitment proceeding, we must assess both the extent of the individual's interest in not being involuntarily confined indefinitely and the state's interest in committing the emotionally disturbed under a particular standard of proof. Moreover, we must be mindful that the function of legal process is to minimize the risk of erroneous decisions.
*1101 Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (citing Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). As the United States Supreme Court observed, the function of a standard of proof for due process purposes is "to `instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" Addington, 441 U.S. at 423, 99 S.Ct. 1804 (quoting In re Winship, 397 U.S. 358, 370, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring)). "In cases involving individual rights, whether criminal or civil, `[t]he standard of proof ... reflects ... the value society places on individual liberty.'" Addington, 441 U.S. at 425, 99 S.Ct. 1804 (quoting Tippett v. Maryland, 436 F.2d 1153, 1166 (4th Cir.1971) (Sobeloff, J., concurring in part, dissenting in part)).
¶ 8 The Court noted that it had used the clear and convincing standard to protect particularly important individual interests in civil cases. Addington, 441 U.S. at 424, 99 S.Ct. 1804. The Court held that a clear and convincing standard of proof applies to indefinite involuntary civil commitment proceedings and rejected the preponderance standard because the individual interests at stake were of such weight and gravity that the state had to justify confinement by a more substantial standard of proof. Id. at 427, 99 S.Ct. 1804.
¶ 9 We have also applied the balancing test of Mathews when determining what standard of proof is required to satisfy procedural due process concerns in involuntary commitment proceedings. See, e.g., In re Det. of LaBelle, 107 Wash.2d 196, 221, 728 P.2d 138 (1986) (the preponderance standard satisfies due process for a 14-day involuntary civil commitment under RCW 71.05.240); Dunner v. McLaughlin, 100 Wash.2d 832, 839, 843, 676 P.2d 444 (1984) (as a matter of due process, RCW 71.05.310's 90-day civil commitment proceeding requires proof by clear, cogent, and convincing evidence).
¶ 10 Turning first to the individual interests at stake, without question a "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington, 441 U.S. at 425, 99 S.Ct. 1804. Under RCW 10.77.090(1)(d)(i), an individual charged with a misdemeanor that is a violent act may be committed for up to 29 days (evaluation and mental health treatment and restoration of competency time combined).[7] Further, the individual may be forced to spend time in jail awaiting space at the appropriate institution. See Weiss v. Thompson, 120 Wash.App. 402, 85 P.3d 944, review denied, 152 Wash.2d 1033, 103 P.3d 202 (2004). In addition, committing an individual for mental health treatment may give rise to adverse social consequences due to stigma associated with civil commitment.
¶ 11 As to the governmental interests, at the time the provisions for commitment of misdemeanant defendants were added to RCW 10.77.090 the legislature noted the goals of "[i]ncreasing public safety" and making decisions under chapter 10.77 RCW "based on a person's current conduct and mental condition rather than the classification of the charges." RCW 10.77.2101 (LAWS OF 1998, ch. 297, § 46).[8] Another governmental interest at stake is the interest in prosecution of misdemeanors, an interest that is obvious given RCW 10.77.090(1)(d)(i)'s purpose of restoring the misdemeanant defendant to competency to stand trial.
¶ 12 The first of these interests, the interest in public safety, must be considered in light of the fact that even if competency is restored, the potential penalties if the individual is found guilty of a misdemeanor are relatively light. Thus, detention for treatment and restoration of competency under *1102 RCW 10.77.090(1)(d)(i) may have little relative effect in providing for public safety. Moreover, where an individual poses a danger to the public as a result of mental illness, the State has the option to seek involuntary commitment under the civil commitment statutes in chapter 71.05 RCW as an alternative course for protecting the public.
¶ 13 As to the interest in prosecuting misdemeanors, the United States Supreme Court recently stated in regard to restoring a defendant to competency through administration of antipsychotic drugs that "[t]he Government's interest in bringing to trial an individual accused of a serious crime is important." Sell v. United States, 539 U.S. 166, 180, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). Implicit in this statement is the premise that the relative importance of the governmental interest in prosecuting those charged with crimes correlates to the seriousness of the crime. The government simply does not have the same interest in prosecuting misdemeanant defendants as it does in prosecuting defendants charged with felonies.[9] For this reason, we do not agree with the State that the preponderance standard strikes the proper balance in the case of those charged with misdemeanors based upon the legislature's establishment of the preponderance standard in RCW 10.77.090(3) for those individuals incompetent to stand trial who are charged with felonies.[10]
¶ 14 The penalties that may be imposed are also relevant to the State's interest in prosecuting misdemeanors and in balancing all of the interests at stake. Here, for example, it bears noting that the charged misdemeanor, a simple misdemeanor under the county code, is punishable only by a maximum fine of $1,000 or a jail sentence not to exceed 90 days, or both. KCC 28.96.010(B)(7), .410, .450. Thus, one charged with the offense at issue here could spend 29 days in mental health evaluation and care for a crime that carries only a 90 day jail term, at most.
¶ 15 The individual liberty interest at stake here weighs more heavily in the balance than the governmental interests in public safety and prosecution of misdemeanors.
¶ 16 Turning to the risk of an erroneous decision, once the individual is found incompetent to stand trial the only additional matter that must be established in the case of a misdemeanor is that there is a pending charge against the defendant for a violent act. When all that is required is a pending charge of a misdemeanor that involves a violent act, the risk of an erroneous deprivation of liberty is significant. Here, for example, the "proof" consists solely of a one-paragraph police report, based only on the statement given by the bus driver.
¶ 17 Further, the risk of an erroneous deprivation is appreciably greater here than in LaBelle, which the State relies upon for the proposition that the clear and convincing standard is only required for lengthy civil commitments. In LaBelle, one of the appellants contended that the preponderance standard of proof used at his 14-day civil commitment hearing violated due process. Relying on Addington, he argued that the standard of proof for 14 days of involuntary commitment under RCW 71.05.240 should be the clear, cogent, and convincing standard required *1103 for 90-day commitment proceedings under RCW 71.05.310. This court first noted the individual interest"the significant deprivation of liberty and the adverse social consequences to the individual engendered by involuntary commitment." LaBelle, 107 Wash.2d at 221, 728 P.2d 138. This interest is the same interest identified in Addington. The court next identified the State's "interest under its police and parens patriae powers in protecting the community against dangerously disturbed individuals and in providing care to its citizens who are unable, because of mental illness, to care for themselves." Id. These are the same interests identified in Addington, 441 U.S. at 426, 99 S.Ct. 1804.
¶ 18 The court in LaBelle then said that the preponderance standard satisfies due process given that a probable cause hearing is required within 72 hours in order to involuntarily commit an individual for 14 days. LaBelle, 107 Wash.2d at 221-22, 728 P.2d 138. Under RCW 71.05.240, involuntary commitment can be ordered only if the court finds from the evidence presented at the probable cause hearing that "as the result of [a] mental disorder" the individual "presents a likelihood of serious harm," or "is gravely disabled." In LaBelle the court observed that the probable cause hearing protects the individual's liberty interest by assuring prompt review following the initial 72-hour evaluation and treatment period. Id. at 222, 728 P.2d 138. The government's parens patriae interest is protected by the preponderance standard at the probable cause hearing because this standard increases the probability that those remaining in serious need of treatment beyond 72 hours will continue to receive short term treatment until a more formal 90-day commitment hearing under RCW 71.05.310 can be held. Id. The court said that a higher standard of proof would create an unreasonable barrier to short term involuntary commitments. The court reasoned that given that the probable cause hearing is required within 72 hours if the State wants to detain the individual for a longer period, the ability to obtain the necessary evidence in such a short period would be hampered by a higher standard of proof. Id. The court then noted the numerous procedural safeguards at the probable cause hearing which adequately lessened the risk of an erroneous deprivation under the lower preponderance standard of proof. Id.
¶ 19 In urging that LaBelle provides that a clear and convincing standard applies only in the case of indefinite commitment, the State overlooks the analysis in the case, including the importance attributed to the probable cause hearing under RCW 71.05.240 and its role in protecting the interests at stake, including the individual's liberty interest, and in reducing the risk of an erroneous deprivation of the individual's liberty interest.[11] In the case of commitment for mental health treatment and competency restoration under RCW 10.77.090(1)(d), there is no comparable hearing and no determination of current dangerousness or grave disability.
¶ 20 The State also contends, however, that the preponderance standard applies under State v. Wilcox, 92 Wash.2d 610, 600 P.2d 561 (1979), which the State characterizes as establishing the standard for criminal commitment cases. In Wilcox, the standard of proof for involuntary commitment of felony defendants acquitted by reason of insanity was at issue, and the court held that the preponderance of the evidence standard applies. However, Wilcox does not control this case for reasons given in Jones v. United States, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983), also a case involving the standard of proof for committed of insanity acquittees.
¶ 21 Like this court did in Wilcox, the United States Supreme Court held in Jones that the clear and convincing standard of Addington does not apply in the context of commitment of an insanity acquittee. The Court noted that in Addington it had found the clear and convincing standard appropriate *1104 in light of the risk of an erroneous decision, given that in the case of civil commitment a whole range of abnormal behavior might be perceived by some as symptomatic of a mental or emotional disorder where it in fact fell within the range of generally acceptable conduct. Jones, 463 U.S. at 366-67, 103 S.Ct. 3043 (citing Addington, 441 U.S. at 426-27, 99 S.Ct. 1804). "In view of this concern, the Court deemed it inappropriate to ask the individual `to share equally with society the risk of error.'" Jones, 463 U.S. at 367, 103 S.Ct. 3043 (quoting Addington, 441 U.S. at 427, 99 S.Ct. 1804). However, in the case of automatic commitment of an insanity acquittee under the District of Columbia's statutes relevant in Jones, commitment follows only if the "acquittee himself advances" the defense of insanity and proves the criminal act was a result of mental illness, and, more importantly, risk of commitment for mere idiosyncratic behavior is eliminated by proof that the acquittee committed the criminal act. Jones, 463 U.S. at 367, 103 S.Ct. 3043; see State v. Platt, 143 Wash.2d 242, 252, 19 P.3d 412 (2001) (those subject to commitment as insanity acquittees have been found to have committed, under the beyond a reasonable doubt standard, an act that would resulted in a criminal conviction but for their insanity). Thus, the risk of an erroneous decision is less than in the case of the involuntary civil commitment at issue in Addington, and it is unnecessary to demand the same standard of proof. Jones, 463 U.S. at 367, 103 S.Ct. 3043.
¶ 22 Moreover, a defendant on trial for a felony who raises an insanity defense is necessarily competent to stand trial and possesses the capacity to participate in his or her own defense. See In re Pers. Restraint of Fleming, 142 Wash.2d 853, 864-65, 16 P.3d 610 (2001) (because an incompetent person may not be tried for a crime, he cannot seek acquittal on the grounds of insanity while the incapacity continues). Under RCW 10.77.090(1)(d)(i), in contrast, the defendant must be found to be incompetent, i.e., he or she "lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense." RCW 10.77.010(14). The incompetence of the defendant thus may impede investigation of whether he or she engaged in a violent act because the defendant is unable to help challenge the State's claims about the alleged conduct.[12]
¶ 23 Unlike the case of insanity acquittees, the individual committed for restoration of competence under RCW 10.77.090(1)(d)(i) does not "prove" the requisites for commitment. Thus, the lessened risk of an erroneous deprivation of liberty that the Court found in Jones does not exist in the case of the individual who is only charged with a qualifying misdemeanor and who is not competent to stand trial.
¶ 24 Finally, an insanity acquittee is not subject to commitment in any event unless there is a determination made that he or she is a "substantial danger to other persons or... present[s] a substantial likelihood of committing criminal acts jeopardizing public safety or security unless kept under further control by the court or other persons or institutions." RCW 10.77.010(5). There are no similar determinations required before committing a misdemeanant defendant for competency restoration.
¶ 25 Given the level of risk of an erroneous deprivation of liberty and given that the individual interests weigh heavily against the governmental interests, the clear and convincing standard of proof applies. As the United States Supreme Court said in Addington, 441 U.S. at 427, 99 S.Ct. 1804, "[t]he individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state."
¶ 26 Finally, on the matter of the standard of proof, the dissent repeatedly and incorrectly suggests that competency proceedings in general must involve, and Mr. Born's in particular did involve, a determination of future dangerousness equivalent to that required for civil commitment under RCW *1105 71.05.240 or commitment as an insanity acquittee under RCW 10.77.010(5). This is absolutely not true. An opinion as to dangerousness is required, RCW 10.77.060(3)(f), and the psychologist's opinion in this case was only that Mr. Born presented a greater than average risk than would a person in the normal population. The dissent misrepresents the law and the record.
¶ 27 Mr. Born next contends that the stipulated facts do not establish that he was charged with a violent act. The State originally argued that this issue and the issue concerning the standard of proof are moot issues, but then withdrew this argument and urged this court to review this case, as the Court of Appeals did, in light of the public interest in the issues. Cf., e.g., In re Pers. Restraint of Meyer, 142 Wash.2d 608, 615, 16 P.3d 563 (2001) (a personal restraint petition may be used to challenge unlawful state action, even if the issues raised are moot at the time of review, where matters of continuing and substantial importance are involved).
¶ 28 While we agree that the standard of proof issue involves a matter of continuing substantial public interest, we do not agree that this case is moot. RCW 7.36.010 provides that "[e]very person restrained of his liberty under any pretense whatever, may prosecute a writ of habeas corpus to inquire into the cause of the restraint."[13] In Monohan v. Burdman, 84 Wash.2d 922, 925, 530 P.2d 334 (1975),[14] the court determined that potential adverse consequences of canceling a tentative parole release date were "sufficiently significant [adverse] `collateral consequences' to retrieve" the petition for a writ of habeas corpus "from the `limbo of mootness,'" even though the petitioner had been released on parole after his petition was filed. Among such effects, the court said, "[i]t is not unlikely that ... a future sentencing judge, in the event of an infraction of ... [the] law, might well consider the rescission of his initial parole release date as a factor mitigating against continued parole or possible probation." Id. at 925, 530 P.2d 334.
¶ 29 As Mr. Born argues, the determination that he was charged with a violent act has potential collateral consequences sufficient to constitute restraint under RCW 7.36.010. The trial court found that Mr. Born was charged with a violent act, and this determination was affirmed by the superior court and the Court of Appeals. A violent act is defined in relevant part as "behavior that ... if completed as intended would have resulted in" or "was threatened to be carried out by a person who had the intent and opportunity to carry out the threat and would have resulted in ... nonfatal injuries." RCW 10.77.010(21).
¶ 30 Under RCW 10.77.090(1)(d)(i)(A)(II), (B), and (C), an individual who is charged with a misdemeanor and has "been previously found incompetent under this chapter ... with regard to an alleged offense involving ... threatened ... physical harm to a person" and who is found by a court to be incompetent may be committed for mental health treatment and evaluation. Without exploring the full extent of the meaning of threatened physical harm as used in RCW 10.77.090(1)(d)(i)(A)(II), it is apparent that at the least it includes the relevant portion of the definition of "violent act" under RCW 10.77.010(21) quoted above and applicable here.
¶ 31 Thus, if Mr. Born is charged with a misdemeanor in the future, and is found incompetent, the statutes direct that he must be committed for competency restoration based on the determination made in this case that he was charged with a violent act.[15] Under their plain language, the statutes do not require a determination that the future *1106 charge itself be a charge of a violent act. Thus, the conclusion that Mr. Born was charged with a violent act in this case may have the significant potential adverse consequence of future commitment for competency restoration if he is charged with another misdemeanor.[16] Accordingly, by analogy to Monohan, Mr. Born is still sufficiently restrained of his liberty to retrieve his petition from the "limbo of mootness." This case is not moot. Cf. In re Pers. Restraint of Mines, 146 Wash.2d 279, 284, 45 P.3d 535 (2002) (confirming the reasoning in Monohan, but deciding the issues raised in the personal restraint petition on the basis they were of substantial and continuing public interest); In re Pers. Restraint of Davies, 142 Wash.2d 165, 169 n. 2, 12 P.3d 603 (2000) (noting the court had previously denied a motion for dismissal of the personal restraint petition because the petitioner was no longer incarcerated or under state supervision, observing that a conviction has potential adverse consequences such as an increased sentence under a recidivist statute for a future offense and the social stigma associated with a criminal conviction); In re Pers. Restraint of Powell, 92 Wash.2d 882, 887, 602 P.2d 711 (1979) ("release from confinement is no longer the sole function of the writ of habeas corpus"; "an unlawful conviction can serve as a restraint on liberty due to collateral consequences" such as the effect on one found to be an habitual offender, the effect on the parole process and potential effect on future minimum sentences (under the former sentencing scheme), the creation of difficulties for one trying to reestablish himself or herself in society on release from prison, and the stigma and burden that an invalid sentence imposes regardless of any relationship to any other sentence).
¶ 32 The State, however, has cited state and federal cases for the proposition that habeas relief is not appropriate based on "[s]peculative theories regarding future collateral consequences." Br. of Resp't at 13. Two of the cases are United States Supreme Court cases concerning the federal habeas statutes. Spencer v. Kemna, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); Maleng v. Cook, 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989). However, the federal statutes require the petitioner to be "in custody." 28 U.S.C. §§ 2241, 2254. Neither chapter 7.36 RCW nor the Rules of Appellate Procedure relating to personal restraint petitions contain "in custody" language. RCW 7.36.010; RAP 16.4(b) (and the rule expressly refers to restraint other than confinement); see Meyer, 142 Wash.2d at 615, 16 P.3d 563 (noting that federal habeas statutes differ from state rules concerning personal restraint petitions because the federal statutes require the petitioner to be "in custody").
¶ 33 The State also cites In re Personal Restraint of Paschke, 80 Wash.App. 439, 909 P.2d 1328 (1996). There, the court held that the possibility of future confinement as a sexually violent predator is a collateral consequence of pleading guilty to prior crimes that a trial court has no duty to advise about at the time of the guilty plea. Id. at 444, 909 P.2d 1328. The case turned on the validity of the prior guilty pleas and whether the petitioner had adequately been advised of the consequences of pleading guilty.
¶ 34 Finally, the State cites Proll v. Morris, 85 Wash.2d 274, 534 P.2d 569 (1975). The court there said that "[t]he question on an application for a writ of habeas corpus is the legality of detention, and the remedy where detention is held illegal is release" and that "the writ will not issue where it can have no effect on the petitioner's custodial status." Id. at 277, 534 P.2d 569. These statements do not state the present function of the writ of habeas corpus. As noted, "release from confinement is no longer the sole function of the writ of habeas corpus." Powell, 92 Wash.2d at 887, 602 P.2d 711.
*1107 ¶ 35 The State also contends that Mr. Born is not presently restrained because a future court would have to determine in the first instance whether commitment for competency restoration would be appropriate in the event Mr. Born was charged with a misdemeanor in the future and was found incompetent to stand trial. The problem is, however, that the statutes on their face contemplate that the findings in this case of incompetency with regard to the charge of a violent act would negate any need to determine whether the future charge involved a violent act in order to commit an incompetent defendant restoration of competency to stand trial on the future misdemeanor charge.
¶ 36 Mr. Born is sufficiently under present restraint to seek habeas relief from the superior court's finding that the pending charge in this case constituted a violent act.
¶ 37 Accordingly, we turn to the question whether under a clear and convincing standard the facts stated in the incident report establish that Mr. Born was charged with a violent act. The superior court found that Born "intended to raise his fist. From this conduct, the court concludes that Mr. Born did intend the act of striking the driver, which, if completed, presumably would have resulted in fatal or nonfatal injury." Finding of Fact 4, CP at 19.
¶ 38 Initially, we note that in 2004 the legislature amended the definition of "violent act" in RCW 10.77.010(21) by defining "nonfatal injuries" to mean "physical pain or injury, illness, or an impairment of physical condition. `Nonfatal injuries' shall be construed to be consistent with the definition of `bodily inquiry,' as defined in RCW 9A.04.110." LAWS OF 2004, ch. 157, § 2(12).[17] We need not, and therefore do not, decide whether this amendment is retroactive to Mr. Born's case because even if this new definition is applied the incident report does not establish that Born was charged with a violent act. That is, the incident report does not contain proof under the clear and convincing standard that Mr. Born's behavior, if completed as intended, or that threatened behavior, if carried out with intent and opportunity to carry out the threat, would have resulted in "physical pain or injury, illness, or an impairment of physical condition." RCW 10.77.010(21).
¶ 39 As to Mr. Born's intent, there is nothing beyond the bare facts of a cocked fist and Born's statement that the driver would take him where he wanted to go and he was not getting off the bus. These facts do not clearly and convincingly lead to the inference that Mr. Born intended to strike the bus driver. And the stated subjective belief of the driver that he feared Born might hit him does not establish Mr. Born's intent.
¶ 40 While the incident report says that Mr. Born was "seated at the front on the passenger side" of the bus, CP at 8 (emphasis added), there is no indication in which seat he was sitting and no indication how far he was from the bus driver.[18] Also absent is evidence that Born made any move toward the driver or attempted to block the driver's departure from the bus. To the contrary, the only evidence demonstrates that Mr. Born remained seated and did not approach the driver. There are no facts from which any inference could be drawn that when Born cocked his fist back that the driver was within reach and any "threatened" behavior could be carried out. Cf. State v. Murphy, 7 Wash.App. 505, 511, 500 P.2d 1276 (1972) (noting that one could be guilty of assault "if he raised his hand in anger with the apparent purpose to strike and sufficiently near to enable the purpose to be carried into effect" (emphasis added)).[19]
*1108 ¶ 41 Thus, regardless of the definition of "nonfatal injuries" for purposes of RCW 10.77.090(21), the State failed to prove by clear and convincing evidence that Born was charged with a violent act.[20]
¶ 42 Finally, the State relies on RCW 10.77.260 and RCW 10.77.092 to support its claim that Mr. Born was charged with a violent act. However, these statutes do not support the State's argument. RCW 10.77.260 pertains to presumptions to be applied "[i]n determining whether a defendant has committed a violent act." RCW 10.77.260(1). The presumptions apply with regard to a "past conviction, guilty plea, or finding of not guilty by reason of insanity." RCW 10.77.260(1)(a). The statute appears relevant in determining whether the defendant has committed a violent act in the past for which he was convicted, pleaded guilty, or was found not guilty by reason of insanity. While the parties agreed to the facts in the police incident report for purposes of Mr. Born's application for a writ of habeas corpus, the charge against him was ultimately dismissed because he remained incompetent to stand trial.
¶ 43 RCW 10.77.092 was enacted to respond to Sell and pertains to administration of involuntary medication for the purpose of competency restoration pursuant to RCW 10.77.090. The State believes the statute is relevant because it lists harassment as a "serious offense per se" in the context of competency restoration. RCW 10.77.092(1)(e). By its plain terms the statute only has application in determining whether a court may authorize involuntary medication to restore competency. There is nothing in RCW 10.77.092 that equates its list of serious crimes with the definition of "violent act" in RCW 10.77.010(21).

Conclusion
¶ 44 We hold that due process requires that the standard of proof under RCW 10.77.090(1)(d)(i) is proof by clear and convincing evidence. Here, the State did not prove by clear and convincing evidence that Mr. Born was charged with a violent act, and accordingly failed to establish the prerequisites for commitment for restoration of competency under the statute. Because Born is no longer committed under this statute, and the misdemeanor charge against him has been dismissed, the restraint he is presently under is the finding that he was charged with a violent act. Because that finding has significant potential collateral consequences should Mr. Born be charged with a misdemeanor in the future and found to be incompetent, we remand this matter to the superior court and direct that court to grant the petition for habeas corpus to the extent of vacating its finding of a violent act.
ALEXANDER, C.J., C. JOHNSON, SANDERS and CHAMBERS, JJ., concur.
OWENS, J. (dissenting).
¶ 45 A court may commit a misdemeanant defendant for mental health treatment and competency restoration upon finding that the defendant is "not competent"[1] and that he or she has either "[a] history ... or a pending charge of one or more violent acts."[2] The court's competency determination is made "following" its receipt of the mental health *1109 evaluation report mandated in RCW 10.77.060. RCW 10.77.090(1)(a). That report is the product of a prior court-ordered commitment of the defendant for a mental health examination, a commitment "not to exceed fifteen days from the time of admission to the [mental health] facility." RCW 10.77.060(1)(a). The statutorily prescribed report "shall include," among other things, "an opinion as to whether the defendant is a substantial danger to other persons, or presents a substantial likelihood of committing criminal acts jeopardizing public safety or security." RCW 10.77.060(3)(f) (emphasis added). Upon concluding that a misdemeanant defendant is "not competent" and has "[a] history... or a pending charge of one or more violent acts," the court may commit the defendant for treatment and competency restoration for a period not to "exceed fourteen days in addition to any unused time of the evaluation under RCW 10.77.060." RCW 10.77.090(1)(d)(i)(A)(I), (B), (C)(I).
¶ 46 At issue in the present case is the standard by which the State must prove the statutory predicates for committing a misdemeanant defendant for competency restoration under RCW 10.77.090(1)(d)(i). I part company with the majority on its analysis of this issue and each subsequent issue. First, the majority's consideration of the standard of proof proceeds without regard to the oft-recognized principles that discerning legislative intent is our primary duty and legislative enactments are presumptively constitutional. Second, in my view, the majority's rejection of the preponderance standard cannot be reconciled with this court's prior determination that the preponderance standard amply protects the due process rights of individuals civilly committed for a potentially longer period than the 29-day maximum at issue here; indeed, the majority opinion is out of step with our prior decisions requiring the higher standard of clear and convincing evidence only in the context of lengthy or indefinite civil commitments. Third, contrary to the majority's analysis, the issue of whether Mark Born committed a "violent act" is a moot issue that does not merit this court's review. Fourth, the majority substitutes its own factual conclusion for the superior court's explicit determination that the State proved, even by the clear and convincing standard, Born's commission of a "violent act." In contrast to the majority's resolution of this case, I would hold that the legislature intended for the preponderance of the evidence standard to apply to competency restoration proceedings under RCW 10.77.090(1)(d)(i), that the preponderance standard protects the due process rights of misdemeanant defendants committed under the statute, and that the issue of Born's commission of a "violent act" is moot and warrants no further review.

FACTS
¶ 47 Born was charged in King County District Court with unlawful bus conduct, a violation of King County Code 28.96.010(B)(7).[3] The conduct giving rise to the charge was described in the King County Sheriff's Office incident report:
Victim Fremstad was operating Metro Bus # 2315. Suspect Born boarded the bus at N 137th and Greenwood. He rode the bus to the end of the route at Shoreline Community College. Fremstad felt sorry for him so he let him ride the bus back to N 145th and Aurora where he lays over and starts his route 28. There he asked Born to get off of the bus. Born was seated at the front on the passenger side. Fremstad had stood up to ask him and Born raised his fist and cocked it back as if to hit Fremstad. He said so that you (Fremstad) will take me where I want to go. That he was not getting off. Fremstad asked him twice and both times Born raised his fist and said he was not getting off of the bus. Fremstad was concerned that Born would hit him. He felt that Born might have some mental issues. He got off of the bus and called for assistance from his cell phone. Shoreline PD arrived and took Born into custody until we arrived *1110 about 3 minutes later. Born was advised of his rights by Sgt. Saulet and he would not say if he understood them. He did say that he had the right to have the bus take him anywhere he wanted.

Clerk's Papers (CP) at 8 (emphasis added).
¶ 48 At Born's arraignment on October 1, 2001, King County District Court Judge Mark Chow ordered an initial mental health examination, pursuant to RCW 10.77.060. On October 11, Judge Chow conducted a restoration hearing, which Born attended with counsel. Consistent with the statement in RCW 10.77.090(1)(a) that a finding of incompetency is made "following a report as provided in RCW 10.77.060," Judge Chow reviewed the October 8 report of the mental health evaluation. Tr. of Restoration Hr'g (Oct. 11, 2001) (Reply Br. of Appellant, App. 1) (TR) at 3. The psychologist concluded that Born lacked "the capacity to assist his attorney in his own defense due to his major mental illness." Suppl. CP, Forensic Mental Health Evaluation (Oct. 8, 2001) at 4. Providing an "opinion concerning dangerousness," as mandated in RCW 10.77.060(3)(f), the psychologist reported, among other things, that Born was "described as significantly angry and agitated" and that he was "not compliant with recommended treatment"; the psychologist concluded that, because Born was "actively psychotic, he pose[d] ... a greater than average risk for future dangerousness and future criminal behavior, based solely on his psychosis, than would a person in the normal population."[4] In addition to reviewing the report, Judge Chow heard argument of counsel as to whether Born had "[a] history ... or a pending charge of one or more violent acts." Judge Chow made no decision regarding Born's "history" of "violent acts," focusing instead on the actions giving rise to the charge of unlawful bus conduct. TR at 5, 8. Determining that there was "sufficient finding under the statute to order up a restoration," Judge Chow ordered Born to be taken to Western State Hospital for treatment and competency restoration. TR at 9.
¶ 49 In an application for a writ of habeas corpus filed later that day, Born did not dispute the district court's finding of incompetency but challenged the court's determination that he had been charged with behavior "constitut[ing] a `violent act,' as defined in RCW 10.77.010(21)." CP at 2. The writ application sought an order directing the district court to provide the superior court with "a full and complete transcript of the record and proceedings in this cause for review" and requiring the King County Jail to deliver Born to a hearing on the writ. CP at 1-2. The October 12, 2001, order on the writ repeated both directives, set a hearing on the matter for later that afternoon before King County Superior Court Judge Glenna Hall, and stayed Judge Chow's restoration order. CP at 10. When neither Born nor the record before Judge Chow was produced, Judge Hall continued the hearing to October 16. Verbatim Report of Proceedings (VRP) (Oct. 12, 2001) at 12, 20-21. Although Born was present for the October 16 hearing on the writ, Judge Hall had received only an untranscribed disk. VRP (Oct. 16, 2001) at 4. Despite disagreeing as to the nature of the writ hearingdefense counsel urged the court to "stand in the shoes of Judge Chow and make a de novo determination based on the documentary evidence," while opposing counsel contended that the inquiry was whether Judge Chow had abused his discretionboth agreed that the hearing could go *1111 forward without the transcript. Id. at 4-5, 7, 10, 16.
¶ 50 Reviewing de novo the facts contained in the incident report, Judge Hall concluded "that, under either standard of proof, (preponderance of the evidence or clear and convincing), Mr. Born committed a violent act as defined by the statute." CP at 19; VRP (Oct. 16, 2001) at 25. Specifically, Judge Hall concluded that the facts proved that Born "intended to commit the act [of striking the driver], which, if completed would have resulted [in] fatal or nonfatal injury." CP at 19. Judge Hall denied the writ and lifted the stay, and Born was transported to Western State Hospital. According to the November 1, 2001, psychological report, Born was found to be incompetent and "unlikely ... [to] gain competency in the foreseeable future." Suppl. CP, Forensic Psychological Evaluation (Nov. 1, 2001) at 3. The evaluator found that Born posed "a higher than average risk of engaging in aggressive and unpredictable behavior based upon his mental illness" and "a higher than average risk of future criminal re-offending, jeopardizing public safety and security in his present mental state." Id. at 4. The evaluator consequently recommended that a civil commitment determination be made. Id. On November 2, 2001, an order was entered dismissing Born's criminal charge without prejudice and initiating civil commitment proceedings.
¶ 51 Born filed a notice of appeal on October 19, 2001, seeking review of two issues. He contended that the State should have been required to prove the statutory elements of mental incompetency and a "violent act" by the higher standard of clear and convincing evidence, and he renewed his argument that the State had failed to prove that his conduct satisfied the statutory definition of a "violent act." The Court of Appeals recognized that, because Born's period of competency restoration had ended, no "effective relief" was available. Born v. Thompson, 117 Wash.App. 57, 63, 69 P.3d 343 (2003); Orwick v. City of Seattle, 103 Wash.2d 249, 253, 692 P.2d 793 (1984) (stating that "[a] case is moot if a court can no longer provide effective relief"). Nevertheless, the court addressed both issues "because they involve[d] matters of continuing and substantial public interest." Born, 117 Wash.App. at 63, 69 P.3d 343; Sorenson v. City of Bellingham, 80 Wash.2d 547, 558, 496 P.2d 512 (1972) (observing that appellate court "may, in its discretion, retain and decide an appeal which has otherwise become moot when it can be said that matters of continuing and substantial public interest are involved"). Rejecting Born's positions on both issues, the Court of Appeals held that the preponderance of the evidence standard was applicable to the competency restoration hearing and that the State had proved that the pending charge arose from behavior amounting to a "violent act" under the statute.
¶ 52 We granted Born's petition for review.

ISSUE
¶ 53 By what standard must the State prove the prerequisites for committing a misdemeanant defendant for mental health treatment and competency restoration under RCW 10.77.090(1)(d)(i)?

ANALYSIS
¶ 54 Standard of Review. At issue is the standard of proof applicable to competency restoration proceedings under RCW 10.77.090(1)(d)(i). The Court of Appeals determined that the proper standard was proof by a preponderance of the evidence. Born, 117 Wash.App. at 68-69, 69 P.3d 343. The standard of proof is a legal question, which this court reviews de novo. Monroe v. Soliz, 132 Wash.2d 414, 418, 939 P.2d 205 (1997); In re Det. of Petersen, 145 Wash.2d 789, 807-08, 42 P.3d 952 (2002) (Ireland, J., dissenting).
¶ 55 Legislative Intent. An axiom of statutory interpretation is that "[o]ur primary duty in interpreting any statute is to discern and implement the intent of the legislature." State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). Like the burden of proof,[5] the *1112 standard of proof is not explicitly defined in RCW 10.77.090(1)(d)(i). Where the plain meaning of a statute is not apparent, we may derive the legislature's intended meaning "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 11, 43 P.3d 4 (2002). As we acknowledged in State v. Hennings, 129 Wash.2d 512, 919 P.2d 580 (1996), "[c]ourts are reluctant to add words to a statute but will sometimes do so where it is necessary to carry out legislative intent." Id. at 523, 919 P.2d 580 (citing 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47.38, at 265-66 (4th ed.1984)); see also State v. Brasel, 28 Wash.App. 303, 309, 623 P.2d 696 (1981); State v. Taylor, 97 Wash.2d 724, 729-30, 649 P.2d 633 (1982).
¶ 56 That the legislature intended for the preponderance of the evidence standard to apply to RCW 10.77.090(1)(d)(i) is discernible from two other provisions of chapter 10.77 RCW. First, RCW 10.77.090(3) provides that, "[i]f the court finds by a preponderance of the evidence that a defendant charged with a felony is incompetent," the court may extend the 90-day competency restoration commitment authorized in RCW 10.77.090(1)(b) by an additional 90 days. (Emphasis added.) Second, when the legislature added the nonfelony competency restoration provision in 1998,[6] it concurrently enacted RCW 10.77.2101, describing "legislative intent" as follows: "Increasing public safety; and making decisions based on a person's current conduct and mental condition rather than the classification of the charges." (Emphasis added.) In RCW 10.77.2101, the legislature thus recognized that an incompetent misdemeanant defendant charged with a "violent act" could pose just as great a threat to public safety as an incompetent felony defendant. The impetus for the 1998 legislation was in fact the 1997 murder of retired Seattle firefighter Stan Stevenson by Dan Van Ho, "an incompetent, mentally ill offender with a history of violence." Br. of Appellant at 20; Reply Br. of Appellant at 20 n. 6. Just days before fatally stabbing Stevenson, Van Ho had been found incompetent to stand trial on a misdemeanor theft charge and had been released from jail. See H.B. REP. on Second Substitute S.B. 6214, at 7, 55th Leg., Reg. Sess. (Wash.1998); Br. of Appellant, App. 5. In light of the legislature's recognition that incompetent misdemeanants could present just as much danger as incompetent individuals charged with felonies, the legislature's explicit requirement of the preponderance standard in competency restoration proceedings for felony defendants compels the conclusion that the legislature likewise intended for courts to apply that standard in competency restoration proceedings for misdemeanant defendants under RCW 10.77.090(1)(d)(i).
¶ 57 An additional fact substantiates the conclusion that the legislature intended for the preponderance standard to apply to incompetent misdemeanant defendants. While the legislature responded directly to the Court of Appeals decision in this case to correct the court's analysis of the definition of "[v]iolent act" in RCW 10.77.010(21),[7] the legislature let stand the court's determination "that the preponderance of the evidence standard is the proper standard under RCW 10.77.090 for the State to establish that an accused should be committed for mental treatment and restoration of competency." Born, 117 Wash.App. at 68-69, 69 P.3d 343. Had the preponderance standard been inconsistent with the legislature's intent, the legislature *1113 would have no doubt corrected that conclusion when it amended the "violent act" definition.
¶ 58 Due Process. In Born's view, constitutional due process requires that the statutory grounds for competency restoration commitment must be proved by a standard higher than the preponderance of the evidence standard. Because the legislature's intended standard of proof is presumptively constitutional, Born "bears the heavy burden of proving unconstitutionality beyond a reasonable doubt." State v. D.H., 102 Wash.App. 620, 623, 9 P.3d 253 (2000) (citing State v. Myles, 127 Wash.2d 807, 812, 903 P.2d 979 (1995)).
¶ 59 We have "repeatedly ... recognized that due process guaranties must accompany involuntary commitment for mental disorders." Dunner v. McLaughlin, 100 Wash.2d 832, 838, 676 P.2d 444 (1984). To determine whether commitment procedures satisfy due process requirements, this court has applied the balancing test set forth in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), which requires a weighing of three factors:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Id. at 335, 96 S.Ct. 893, quoted in In re Det. of LaBelle, 107 Wash.2d 196, 221, 728 P.2d 138 (1986); Dunner, 100 Wash.2d at 839, 676 P.2d 444; In re Harris, 98 Wash.2d 276, 285, 654 P.2d 109 (1982). As this court observed in Dunner, "[b]alanced against the individual's liberty interest is the State's legitimate interest under its parens patriae powers in providing care to its citizens who are unable, because of emotional disorders, to care for themselves," along with the State's interest under its police powers in "protect[ing] the community from the dangerous tendencies of some who are mentally ill." 100 Wash.2d at 839, 676 P.2d 444 (emphasis added).
¶ 60 Responding to due process challenges by balancing the private and governmental interests, courts have recognized the need for a standard higher than the preponderance standard only in the context of indefinite or lengthy civil commitments. In April 1979, the United States Supreme Court held that, in civil proceedings to commit an individual to a state mental hospital for an indefinite period of time, "the `clear and convincing' standard ... is required to meet due process guarantees." Addington v. Texas, 441 U.S. 418, 433, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (reversing lower court's holding that standard in commitment proceeding was proof beyond a reasonable doubt). In 1984, this court "adopt[ed] the holding of Addington" and upheld the "clear, cogent and convincing" standard set forth in RCW 71.05.310 for a 90-day civil commitment. Dunner, 100 Wash.2d at 843, 676 P.2d 444.
¶ 61 With respect to a shorter period of civil commitment, this court has determined, likewise by applying the Mathews balancing test, that the preponderance of the evidence standard satisfies due process. At issue in LaBelle was the constitutional adequacy of the preponderance of the evidence standard prescribed in RCW 71.05.240 for a 14-day period of civil commitment. 107 Wash.2d at 221-23, 728 P.2d 138. The LaBelle court termed Addington inapplicable since, there, "[t]he Court addressed minimum due process standards in the context of a full hearing to commit for an indefinite period whereas this case involves a probable cause hearing to commit for a maximum of 14 days." Id. at 221, 728 P.2d 138 (emphasis added). The LaBelle court was "persuaded that the lesser standard of proof adopted by the Legislature strikes a fair balance between the [liberty] interests of the individual and the interest of the State." Id. While the LaBelle court called attention to the State's parens patriae interest, it also included in its list of "procedural safeguards" the requirement that "the judge must find that one of the statutory grounds for commitment is present." Id. at 222, 728 P.2d 138. It is noteworthy that, under former RCW 71.05.240 (1979), a court was required to commit an individual "for *1114 involuntary treatment not to exceed fourteen days," "if the court [found] by a preponderance of the evidence that such person, as the result of mental disorder, present[ed] a likelihood of serious harm to others or himself, or [was] gravely disabled." (Emphasis added.) Thus, the 14-day civil commitment could be based either on the State's parens patriae powers or its police powersthat is, on its interests in caring for the individual or protecting the public. I also note that, although former RCW 71.05.240 prescribes a maximum extension of the original 72-hour period by no more than 14 days, the commitment may be continued if the State petitions during the 14-day detention for an additional period of treatment. An individual may therefore be civilly committed under the preponderance standard for a period of time in excess of the maximum 29-day commitment of incompetent misdemeanant defendants. See RCW 71.05.300 (requiring that "petition for ninety day treatment shall be filed ... at least three days before expiration of the fourteen-day period"); RCW 71.05.310 (providing that, "[i]f no order has been made within thirty days after the filing of the petition, ... the detained person shall be released"); see also Hickey v. Morris, 722 F.2d 543, 547 (9th Cir.1983) (noting that, under Washington's statutory scheme, "[a] civil committee may be confined for up to 37 days before the state must prove the need for commitment by clear, cogent and convincing evidence").
¶ 62 The LaBelle court thus concluded that, in the context of a short civil commitment (one that could permissibly extend beyond the 29-day maximum at issue in the present case), the preponderance standard struck a fair balance between the individual's and the government's interests (even though the grounds for commitment might be, not the State's parens patriae powers, but its interest in protecting the public from harm). Consistent with the holding in LaBelle, the preponderance standard likewise fairly balances the misdemeanant defendant's liberty interest and the State's interest in protecting the public; under RCW 10.77.060(1)(a) and .090(1)(d)(i), the confinement of misdemeanant defendants based on the preponderance standard may not exceed 29 days, and it is applicable only to those misdemeanant defendants who may represent a danger to the public.[8] I take issue with the majority's perception that RCW 71.05.240 provides greater procedural safeguards than RCW 10.77.090 and with the majority's view that competency restoration commitments are made with "no comparable hearing and no determination of current dangerousness or grave disability." Majority at 1103. The Court of Appeals enumerated "the express statutory safeguards" applicable to competency restoration commitments under RCW 10.77.090.[9] Moreover, the district court cannot commit a misdemeanant for competency restoration unless the court has previously received the report mandated in RCW 10.77.060, which includes "an opinion as to whether the defendant is a substantial danger to other persons, or presents a substantial likelihood of committing criminal acts jeopardizing public safety or security." RCW 10.77.060(3)(f); RCW 10.77.090(1)(a). In sum, I cannot agree with the majority's anomalous position that the liberty interest of a misdemeanant defendant requires greater constitutional protection than the liberty *1115 interest of one who has not come within the criminal justice system.
¶ 63 I find additional guidance in our prior decision concerning the standard of proof applicable to former RCW 10.77.040 (1974), the statute permitting the indefinite commitment of felony defendants acquitted by reason of insanity. In State v. Wilcox, 92 Wash.2d 610, 600 P.2d 561 (1979), we concluded that the preponderance of the evidence standard was applicable:
We hold that proof by a preponderance of the evidence of the statutory elements accords due process to the defendant.... This means that the State must convince the trier of the fact that it is more probably true than not that defendant is dangerous to other persons or is likely to commit felonious acts jeopardizing public safety.
Id. at 613-14, 600 P.2d 561. The Wilcox holding is consistent with the later decision of the United States Supreme Court in Jones v. United States, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). The Jones Court explained that a higher standard of proof was justifiable for indefinite civil commitments but not required for the indefinite commitment of insanity acquittees because "the proof that [the insanity acquittee] committed a criminal act as a result of mental illness eliminates the risk that he is being committed for mere `idiosyncratic behavior.'" Id. at 367, 103 S.Ct. 3043 (quoting Addington, 441 U.S. at 427, 99 S.Ct. 1804); see also Hickey, 722 F.2d at 549 (observing that "the state has a substantial interest in preventing the premature release of persons who have already proved their dangerousness to society"). Thus, both the Wilcox court and the Jones Court determined that the preponderance of the evidence standard for the indefinite commitment of insanity acquittees comported with due process, despite the requirement of a higher standard of proof for lengthy or indefinite civil commitments. As the Court of Appeals observed in the present case, there exists "no persuasive reason to require a higher burden of proof for RCW 10.77.090 than the [Wilcox] [c]ourt concluded was constitutionally required under former RCW 10.77.040." Born, 117 Wash.App. at 67, 69 P.3d 343.
¶ 64 Mootness. The majority contends that the issue of whether Born committed a "violent act" is not moot because there are "potential collateral consequences" to the superior court's determination. Majority at 1105. Specifically, the majority argues that the superior court's "violent act" determination must be vacated because that finding could be detrimental to Born, were he to be charged with a subsequent misdemeanor. However, the statutory provision on which the majority's concern rests does not require a finding of a "violent act." Under RCW 10.77.090(1)(d)(i)(A)(II), an incompetent misdemeanant defendant may be committed for competency restoration if he or she has "been previously found incompetent under this chapter or any equivalent federal or out-of-state statute with regard to an alleged offense involving actual, threatened, or attempted physical harm to a person." (Emphasis added.) The statute thus provides that, if Born were to commit another misdemeanor and again be found incompetent, the court could order competency restoration based, not on "[a] history ... or a pending charge of one or more violent acts," but on the fact that the prior finding of incompetency under chapter 10.77 RCW had been "with regard to an alleged offense involving... threatened ... physical harm to a person." Contrary to the majority's argument, RCW 10.77.090(1)(d)(i)(A)(II) does not say that the prior alleged offense involved a "violent act"; had the legislature chosen to tie RCW 10.77.090(1)(d)(i)(A)(II) to the "violent act" requirements of RCW 10.77.090(1)(d)(i)(A)(I), it could have easily done so.[10] In sum, Judge Chow's unchallenged finding of incompetency was indisputably "with regard to an alleged offense," unlawful bus conduct, "involving" Born's "threatened ... physical harm to a person," the bus driver Fremstad; Judge Chow's legal conclusion that Born's behavior met the definition of a "violent act" is irrelevant to RCW 10.77.090(1)(d)(i)(A)(II). Because the application of RCW 10.77.090(1)(d)(i)(A)(II) is not contingent *1116 upon the district court's or superior court's conclusion of law that Born committed a "violent act," no basis exists for revisiting that conclusion. The "violent act" determination remains moot.
¶ 65 Review of the Superior Court's Denial of the Writ. Having concludederringly, in my viewthat the clear and convincing standard must be applied and that the superior court's finding of a "violent act" is not moot, the majority decides that the facts in the incident report "do not clearly and convincingly lead to the inference that Born intended to strike the bus driver." Majority at 1107. I disagree. Consistent with the determinations of both Judge Chow and Judge Hall, I fail to see how Born's actions could have been viewed as anything other than a threat to strike the bus driver. Indeed, that is exactly what the bus driver expected Born to do.
¶ 66 As a preliminary matter, I note that the superior court's denial of Born's application for a writ of habeas corpus "is subject to review in the same manner as any other trial court decision: whether the findings are supported by substantial evidence and whether those findings support the conclusions of law." Dorsey v. King County, 51 Wash.App. 664, 668-69, 754 P.2d 1255 (1988) (citing Davis v. Rhay, 68 Wash.2d 496, 498, 413 P.2d 654 (1966)). Where the "findings are founded on disputed, but nevertheless substantial, evidence... we are limited by the constitution from substituting our factual conclusions contra to those of the trial court." Davis, 68 Wash.2d at 498, 413 P.2d 654. If, when reviewing the superior court's action on a habeas corpus petition, this court finds the record before it "inadequate for an appropriate determination... of the factual issues involved," the proper course of action is to remand the matter to the trial court for more expansive fact-finding. Scruggs v. Rhay, 70 Wash.2d 755, 763, 425 P.2d 364 (1967).
¶ 67 Even if this court confines its review to the narrative in the police incident report, that account contains substantial evidence to support Judge Hall's factual determinations that Born "raise[d] his fist" and "intend[ed] the act of striking the driver." CP at 19. The report states that Born was seated at the front of the bus; that in response to Fremstad's request to exit the bus, Born "raised his fist and cocked it back as if to hit Fremstad"; that Born told Fremstad he was not exiting the bus and had to be taken where he wanted to go; and that, when Fremstad repeated the request, Born again "raised his fist and said he was not getting off of the bus." CP at 8 (emphasis added). In addition to the description of Born's actions and words, the report records Fremstad's firsthand perception: he "was concerned that Born would hit him." Id. That Fremstad exited the bus and called the police is an additional fact supporting Fremstad's immediate perception of Born's intentions. The undisputed facts in the incident report constitute substantial evidence that Born cocked his fist twice and "intend[ed] the act of striking the driver." CP at 19. Those factual findings in turn support Judge Hall's legal conclusion that Born's conduct met the statutory definition of a "violent act""behavior that ... if completed as intended would have resulted in ... [fatal or] nonfatal injuries." RCW 10.77.010(21)(a)(ii); see State v. R.H.S., 94 Wash.App. 844, 847, 974 P.2d 1253 (1999) (stating that, "[w]ithout question, any reasonable person knows that punching someone in the face could result in a broken jaw, nose, or teeth, each of which would constitute substantial bodily harm"); see also RCW 10.77.260(1)(c) (providing that, "[i]n determining whether a defendant has committed a violent act the court must" ... "[p]resume that the facts underlying the elements, if unrebutted, are sufficient to establish that the defendant committed a violent act").
¶ 68 Finally, despite criticizing the spare record before the superior court, the majority imposes the extraordinary remedy of modifying the superior court's order without reviewing the entire record that was before the district court, requested by the superior court, and forwarded to the Court of Appeals. In the hearing before the superior court, the restriction of the record to the police incident report was plainly an accommodation, a fact the majority ignores. See VRP (Oct. 16, 2001) at 3-7; majority at 1107 n. 19. No such accommodation has been *1117 sought here. Indeed, given that this court has the authority to remand the matter to superior court for further fact-finding, no logical basis exists for this court to ignore the existence of the full record and proceedings before the district court. Scruggs, 70 Wash.2d at 763, 425 P.2d 364. The "violent act" determination was made in the first instance at a hearing that Born attended and at which the court reviewed the file and documents, including not only the incident report, but also the psychologist's report evaluating Born's competency and future dangerousness. See TR at 3. At a minimum, the forensic evaluation corroborates the bus driver's perception that Born had "mental issues," and it provides context for his "concern[] that Born would hit him." CP at 8.

CONCLUSION
¶ 69 I would hold that the State bears the burden of proving by a preponderance of the evidence the prerequisites for committing a misdemeanant defendant for mental health treatment and competency restoration under RCW 10.77.090(1)(d)(i). The legislative intent to require the preponderance of the evidence standard is discernible from related statutory provisions and was substantiated in the legislature's direct response to the Court of Appeals decision in this case. The legislature's endorsement of the preponderance standard is presumptively constitutional, and our prior case law establishes that the preponderance standard adequately protects the due process rights of misdemeanant defendants committed under the statute. As to the issue of Born's commission of a "violent act," I would conclude that the issue is moot and does not warrant this court's review. Were I to reach that issue, I would hold that substantial evidence supported the determination that Born's behavior met the statutory requirements of a "violent act."
BRIDGE, J., IRELAND, J.P.T. and FAIRHURST, J., concur.
NOTES
[1] King County Code 28.96.010(B)(7) prohibits a person on transit property from "[u]nreasonably disturbing others by engaging in loud, raucous, unruly, harmful, abusive or harassing behavior."
[2] "`Incompetency' means a person lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect." RCW 10.77.010(14). RCW 10.77.060 provides that

[w]henever . . . there is reason to doubt [the defendant's] competency, the court on its own motion or on the motion of any party shall either appoint or request the secretary to designate at least two qualified experts or professional persons, one of whom shall be approved by the prosecuting attorney, to examine and report upon the mental condition of the defendant.
[3] RCW 10.77.090(1)(d)(i)(A)-(C) provides that a misdemeanant defendant must be committed for mental health treatment and restoration of competency if the defendant has "[a] history of one or more violent acts, or a pending charge of one or more violent acts; or . . . been previously acquitted by reason of insanity or been previously found incompetent under this chapter or any equivalent federal or out-of-state statute with regard to an alleged offense involving actual, threatened, or attempted physical harm to a person," and a court has found the defendant incompetent. (Emphasis added.)
[4] Born did not challenge the determination that he was incompetent.
[5] When Born was returned to district court following his stay at Western State Hospital, the district court determined that he was still incompetent. The court therefore dismissed the proceedings under RCW 10.77.090(1)(d)(ii), and ordered that Mr. Born be held for 72 hours for evaluation by a county designated health professional pursuant to RCW 10.77.090(1)(d)(iii)(B), which authorizes a 72-hour detention and evaluation for purposes of filing a petition for civil commitment under chapter 71.05 RCW.
[6] The State concedes that it bears the burden of proof under RCW 10.77.090.
[7] RCW 10.77.090(1)(d)(i)(C) provides that placement for mental health treatment and restoration of competency "shall not exceed fourteen days in addition to any unused time of the evaluation under RCW 10.77.060." RCW 10.77.060 provides for commitment for a competency examination "for a period of time necessary to complete the examination, but not to exceed fifteen days."
[8] RCW 10.77.2101 specifically pertains to development of rules by the Department of Social and Health Services to define relevant records and reports under chapter 10.77 RCW accessible by criminal justice agencies.
[9] The legislature amended the definition of the term "violent act" in RCW 10.77.010(21) in 2004 to respond both to the decision below in this case as to what the term "nonfatal injuries" means in RCW 10.77.010(21)'s definition of "violent act," and to the decision in Sell v. United States, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). LAWS OF 2004, ch. 157 § 1. The legislature acknowledged that the Court's decision in Sell "requires a determination whether a particular criminal offense is `serious'" both "in the context of competency restoration and the state's duty to protect the public." LAWS OF 2004, ch. 157, § 1. Whether the legislature's amendment will meet the requirement of Sell is not an issue in this case. Nor has any challenge to the constitutionality of RCW 10.77.090(1)(d) itself been raised here, and we accordingly presume the constitutionality of the statute for the purpose of this decision. See Philippides v. Bernard, 151 Wash.2d 376, 391, 88 P.3d 939 (2004) (a statute is presumed constitutional; a challenging party has the heavy burden of establishing unconstitutionality).
[10] RCW 10.77.090(3) states that "[i]f the court finds by a preponderance of the evidence that a defendant charged with a felony is incompetent, the court shall have the option of extending the order of commitment or alternative treatment" under RCW 10.77.090(1)(b) for 90 days.
[11] The dissent cites the Court of Appeals opinion as enumerating "`the express statutory safeguards'" applicable to competency restoration commitments, and implies that they are as protective as the safeguards for civil commitment under RCW 71.05.240. Dissent at ___ (citing Born, 117 Wash.App. at 67 & n. 20, 69 P.3d 343). They are not the same. Compare RCW 10.77.020 and RCW 10.77.060 (setting forth procedural requirements for competency evaluation) (referred to in RCW 10.77.090 and by the Court of Appeals in Born) with RCW 71.05.240.
[12] Because there is no requirement of a "violent act" in the case of defendants charged with felonies who are found to be incompetent, see RCW 10.77.090, this concern does not arise as to incompetent persons charged with felonies.
[13] Because Mr. Born's petition for a writ of habeas corpus was filed in and decided by the superior court, the rules of appellate procedure applying to personal restraint petitions do not apply. See RAP 16.3(b); Toliver v. Olsen, 109 Wash.2d 607, 746 P.2d 809 (1987).
[14] Monohan v. Burdman, 84 Wash.2d 922, 530 P.2d 334 (1975) was decided before the 1976 effective date of the Rules of Appellate Procedure governing personal restraint petitions filed in appellate courts.
[15] No challenge to the constitutionality of RCW 10.77.090(1)(d)(i)(A)(II), (B), and (C) has been raised in this case, and therefore we presume the constitutionality of these statutory provisions for purposes of our analysis. See Philippides, 151 Wash.2d at 391, 88 P.3d 939.
[16] The dissent complains that RCW 10.77.090(1)(d)(i)(A)(II) does not require a finding of "violent act" but instead refers to a prior finding of incompetency with regard to an offense involving threatened physical harm to a person. Dissent at 1115. Then the dissent points out that Judge Mark Chow's finding of incompetency was with regard to an alleged offense involving a threat of physical harm to the bus driver. Dissent at 1115. That finding, however, was the finding establishing a violent act. Thus, as the dissent itself explains, the determination of a violent act in this case clearly falls within the statutory provision.
[17] This amendment was made in part to respond to the Court of Appeals' decision in this case that "nonfatal injuries" means "serious physical injuries." Born v. Thompson, 117 Wash.App. 57, 72, 69 P.3d 343 (2003). See LAWS OF 2004, ch. 157, § 1.
[18] While the Court of Appeals stated that the record "indicates that [Mr. Born] was within striking distance" of the bus driver, Born v. Thompson, 117 Wash.App. 57, 73, 69 P.3d 343 (2003), the police incident report does not support this statement.
[19] The dissent says that remand for further fact-finding is appropriate in order to determine whether Born was charged with a "violent act." The State and Mr. Born agreed to submit the habeas corpus petition to the superior court for resolution based on the facts in the police report. Given this agreement, remand is inappropriate.
[20] We also have doubts that if Mr. Born's alleged conduct in this case is deemed sufficient to constitute a violent act, it would be, factually, a "serious crime" justifying commitment for competency restoration under Sell, 539 U.S. at 180, 123 S.Ct. 2174.
[1] RCW 10.77.090(1)(d)(i)(B). "`Incompetency' means a person lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect." RCW 10.77.010(14).
[2] RCW 10.77.090(1)(d)(i)(A)(I). RCW 10.77.010(21) defines "[v]iolent act," in part, as "behavior that: (a)(i) Resulted in; (ii) if completed as intended would have resulted in; or (iii) was threatened to be carried out by a person who had the intent and opportunity to carry out the threat and would have resulted in, homicide, nonfatal injuries, or substantial damage to property." (Emphasis added.) A noncompetent misdemeanant could also be committed for competency restoration if he or she "has ... been previously found incompetent under [chapter 10.77 RCW] or any equivalent federal or out-of-state statute with regard to an alleged offense involving actual, threatened, or attempted physical harm to a person." RCW 10.77.090(1)(d)(i)(A)(II).
[3] "B. Misdemeanors. The following actions are prohibited in, on or in relation to all transit properties.... 7. Unreasonably disturbing others by engaging in loud, raucous, unruly, harmful, abusive or harassing behavior." King County Code 28.96.010(B)(7). King County specifically alleged that Born had "exhibit[ed] harassing behavior." Clerk's Papers at 8.
[4] Suppl. CP, Forensic Mental Health Evaluation (Oct. 8, 2001) at 5. The majority makes the unsubstantiated claim that "[t]he dissent misrepresents the law and the record." Majority at 1105. To the contrary, beginning in the opening paragraph, the dissent sets forth accurately and in detail the statutory scheme for ordering competency restoration, explicitly quoting the requirement in RCW 10.77.060(3)(f) that the mandated psychological report must provide "an opinion as to whether the defendant is a substantial danger to other persons, or presents a substantial likelihood of committing criminal acts jeopardizing public safety or security." Likewise accurate is the above quotation of the psychologist's opinion. Here, Judge Chow, as required by RCW 10.77.090(1)(a), read the report's opinion prior to making his determination that Born was incompetent and, necessarily, before committing Born for competency restoration based upon an additional finding of a "violent act." While the majority would prefer that this court ignore the mandatory psychological evaluation, it is a prominent requirement in RCW 10.77.060, and that statute works inextricably with the competency restoration statute, RCW 10.77.090.
[5] The Court of Appeals held, as the State had already conceded, that the State bore the burden of proof under RCW 10.77.090(1)(d)(i). Born, 117 Wash.App. at 65-66, 69 P.3d 343 (citing State v. Wilcox, 92 Wash.2d 610, 612, 600 P.2d 561 (1979)).
[6] RCW 10.77.090(1)(d)(i) amended RCW 10.77.090(1), which had previously made no provision for the commitment of misdemeanant defendants for competency restoration. Laws of 1998, ch. 297, § 38.
[7] The legislature expressly responded to the Court of Appeals opinion by adding two clarifying sentences to the definition of "`[v]iolent act'" in RCW 10.77.010(21): "As used in this subsection, `nonfatal injuries' means physical pain or injury, illness, or an impairment of physical condition. `Nonfatal injuries' shall be construed to be consistent with the definition of `bodily injury,' as defined in RCW 9A.04.110." See Laws of 2004, ch. 157, § 1 (noting that the Court of Appeals "interpreted the term `nonfatal injuries' in a manner that conflicts with the stated intent of the legislature ... in section 1, chapter 297, Laws of 1998").
[8] In Sell v. United States, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003), the United States Supreme Court recognized the important governmental interest in "bringing to trial an individual accused of a serious crime." Id. at 180, 123 S.Ct. 2174. When our legislature responded to the Court of Appeals opinion in the present case, see supra note 6, it likewise acknowledged that Sell "require[d] a determination whether a particular criminal offense [was] `serious' in the context of competency restoration and the state's duty to protect the public." Laws of 2004, ch. 157, § 1. Consequently, the legislature enacted RCW 10.77.092, defining "serious offenses." In addition to defining certain offenses as "serious" per se, see RCW 10.77.092(1), the statute sets forth standards whereby a court may deem other charges "serious" for purposes of competency restoration. See, e.g., RCW 10.77.092(2)(b)(i) (defining as "serious" a charge involving "an allegation ... that the defendant created a reasonable apprehension of bodily or emotional harm to another").
[9] Contrary to the majority's implication, see majority at 1103 n. 11, the Court of Appeals did not limit its enumeration of the explicit safeguards to those found in RCW 10.77.060, but noted as well the extensive protections afforded in RCW 10.77.020 and RCW 10.77.090. See Born, 117 Wash.App. at 67 & n. 20, 69 P.3d 343.
[10] The majority does not explain why the legislature chose not to tie RCW 10.77.090(1)(d)(i)(A)(II) to the statutory definition of "violent act." See majority at 1106 n. 16.